GEOFFREY C. LYON (SBN 132747)
*glyon@lyonlawyer.com*
**LYON LAW PC**
3605 Long Beach Blvd Ste 311
Long Beach, CA 90807
Tel: (562) 426-2112

Attorney for Plaintiff,
THUHONG DO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUHONG DO,<br><br>Plaintiff,<br><br>vs.<br><br>SAUDI ARABIAN AIRLINES CORPORATION DBA SAUDIA; and DOES 1 to 10,<br><br>Defendants. | Case No.: 2:23-cv-00135-MRA (RAOx)<br><br>**PLAINTIFF DO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SUMMARY JUDGMENT**<br><br>Date: August 1, 2024<br>Time: 1:30 pm<br>Place: Courtroom 10B<br><br>Complaint Filed: November 14, 2022<br>Notice of Removal: January 9, 2023<br>FPTC: October 24, 2024 |

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ 2

TABLE OF AUTHORITIES ........ 4

MEMORANDUM OF POINTS AND AUTHORITIES ........ 8

I. FACTS ........ 8

A. Plaintiff Was an Excellent Employee Who Went Above and Beyond ........ 8

B. Plaintiff Is Denied Lunch Breaks ........ 8

C. Plaintiff's Safety Complaints Are Not Addressed ........ 9

D. Plaintiff Is Asked To Commit Unlawful Acts ........ 9

E. Plaintiff Is Retaliated Against For Requiring and Taking Medical Leave ........ 10

II. STANDARD OF REVIEW ........ 12

III. LEGAL ANALYSIS ........ 12

A. Failure to Reasonably Accommodate a Disability ........ 12

B. Defendant Failed to Engage in an Interactive Process ........ 15

C. Disability Discrimination ........ 16

D. Defendant Retaliated Against Plaintiff for Requesting ........ 17

Accommodations for Disabilities ........ 17

E. No Undue Hardship Defense: The Leave had not Already Become Indefinite by the Time of Termination ........ 18

F. Defendant Retaliated Against Plaintiff for Taking CFRA Medical Leave ........ 20

G. Plaintiff States a Claim for Medical Leave Discrimination ..... 21

H. Defendant Retaliated for Opposing FEHA Violations (Claim 8) ..... 22

I. FEHA and Whistleblower Retaliation for Opposing Conduct in Violation of FEHA, the Labor Code and OSHA ..... 23

J. Defendant Failed to Prevent and Stop Discrimination (Claim 9) ..... 24

K. Wrongful termination ..... 24

L. Age Discrimination ..... 24

M. Failure to Prevent or Stop Discrimination ..... 25

N. Failure to Grant Meal or Rest Breaks ..... 25

O. Punitive Damages ..... 26

# TABLE OF AUTHORITIES

**Cases**

*Ahlstedt v. Board of Education* (1947) 79 Cal.App.2d 845 ........ 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ........ 12

*Andrews v. Pride Industries* 213 F.Supp.3d 1288, 1308 (E.D. Cal. 2016), *amended and superseded on other grounds*, 2017 WL 11980; *Morgan*, 88 Cal. App. 4th at 62 ........ 23

*Anthoine*, 605 F.3d 740 ........ 18

*Arce v. The Ensign Group, Inc.* (2023) 96 Cal. App. 5th 622 ........ 25

*Avila v. Continental Airlines, Inc*. (2008) 165 Cal. App. 4th 1237 ........ 21

*Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1125–26 (9th Cir. 2001) ........ 20

*Cal. Fair Emp. & Hous. Comm'n v. Gemini Aluminum Corp.* (2004) 122 Cal. App. 4th 1004 ........ 24

*Carroll v. Civil Service Com*. (1973) 31 Cal.App.3d 561 ........ 19

*Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal. App. 5th 1028 22

*Criado v. IBM Corp*. (1st Cir. 1998) 145 F.3d 437 ........ 13

*Dudley v. Department of Transportation* (2001) 90 Cal. App. 4th 255 ........ 20

*Faust*, 150 Cal. App. 4th at 885 ........ 20

*Gantt v. Sentry Insurance* (1992) 1 Cal. 4th 1083 ........ 24

*Garcia-Ayala v. Lederle Parenterals* ........ 13, 14

*Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 844 (2015) ........ 13

*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal. App. 4th 34 .................................. 15

*Gonzalez v. ATI Sys. Int'l, Inc.*, No. B223779, 2011 WL 1902582 at *8 (Cal. Ct. App. May 20, 2011) .................................................................................................. 17

*Green*, 192 Cal. App. 4th at 455 ................................................................................ 18

*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215 .......................................... 13

*Harris v. City of Santa Monica* (2013) 56 Cal. 4th 203 ............................................. 24

*Hudson v. Home Depot, U.S.A., Inc.*, No. CIV. 1:13-366 WBS, 2015 WL 409672, at *6 & n.10 (D. Idaho Jan. 29, 2015) ........................................................................ 21

*Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001) .. 13, 17

*Jensen v. Wells Fargo Bank* (2000) 85 Cal. App. 4th 245 ......................................... 13

*Johnson v. Cirrus Educ. Grp., Inc.*, No. 5:20-CV-256 (MTT), 2022 WL 4003871, at *6 (M.D. Ga. Sept. 1, 2022) ........................................................................................ 18

*Johnson v. United Cerebral Palsy/Spastic Children's Found.* (2009) 173 Cal. App. 4th 740 ..................................................................................................................... 16

*Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989), *cert. denied*, 498 U.S. 814 (1990) ........................................................................................... 13, 17

*Mayer v. Multistate Legal Stud., Inc.*, 52 Cal. App. 4th 1428, 1434–37 (1997) ......... 19

*McInteer v. Ashley Distribution Servs., Ltd.*, 40 F. Supp. 3d 1269, 1286–87 (C.D. Cal. 2014) ...................................................................................................................... 17

*Miller v. Department of Corrections* (2005) 36 Cal. 4th 446 ..................................... 22

*Nazir v. United Airlines, Inc.* (2009) 178 Cal. App. 4th 243 ........................................ 12

*Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal. App. 4th 509 ................................ 20

*Norris v. Allied–Sysco Food Services, Inc*., 948 F. Supp. 1418, 1434 (N.D. Cal. 1996) ........................................................................................................ 16

*Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ....................... 18

*Patten v. Grant Joint Union High Sch. Dist*. (2005) 134 Cal. App. 4th 1378 ............ 23

*Ralph v. Lucent Technologies, Inc*., 135 F.3d 166, 171–172 (1st Cir.1998)............... 13

*Roby v. McKesson Corp*., 47 Cal. 4th 686, 713–14 (2009), as modified (Feb. 10, 2010)................................................................................................................. 13

*Rymel v. Save Mart Supermarkets, Inc*. (2018) 30 CA5th 853 .................................. 13

*Sanchez v. Swissport, Inc.* (2013) Cal. App. 4th 1331 ............................................... 13

*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal. App. 5th 570............... 15, 21

*Swanson v. Morongo Unified School District* (2014) 232 Cal. App. 4th 954............. 15

*Trujillo v. North County Transit Dist.*(1998) 63 Cal. App. 4th 280............................ 25

*Wills v. Superior Court* (2011) 194 Cal. App. 4th 143............................................... 16

*Wilson v. County of Orange* (2009) 169 Cal. App. 4th 1185 ...................................... 15

*Wysinger*, 157 Cal. App. 4th at 418........................................................................... 18

*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal. 4th 1028 ...................................... 22, 23

*Yau v. Santa Margarita Ford, Inc*. (2014) 229 Cal. App. 4th 144 .............................. 24

*Zamora v. Sec. Indus. Specialists, Inc.* (Ct. App. 2021) 285 Cal. Rptr. 3d 809.......... 17

*Zavala v. Arce* (1997) 58 Cal.App.4th 915 ................................................................ 12

**Statutes**


42 U.S.C. § 12112 .......... 15

Cal. Gov't. Code § 12940 .......... 24

Cal. Lab. Code § 226.7 .......... 25

Cal. Code Civ. Proc. §437c .......... 12

Cal. Civ.Code, § 3294, .......... 26

Cal. Govt. Code § 12940(m) .......... 12

Cal. Govt. Code 12945.2 .......... 20


**Other Authorities**


CACI 2430 .......... 24

CACI 2620 .......... 20


**Rules**


FRCP 56 .......... 12


**Regulations**


2 Cal. Code Regs. § 11068 .......... 17

2 Cal. Code Regs 11021 .......... 22, 23

29 C.F.R. § 1630.14 .......... 15

29 C.F.R. § 825.220 .......... 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS

### A. Plaintiff Was an Excellent Employee Who Went Above and Beyond

On or about March 1, 2014, Plaintiff was hired at Saudi Arabian Airlines as a Station Administrative Coordinator. Plaintiff excelled at her work and regularly went above and beyond, including training other employees while she was supposed to be on medical leave. On or about July 1, 2019, Plaintiff was promoted to Senior Admin Coordinator. Alehedeb Depo. at 87:8-19; Do Depo. at 44:25-45:24. Plaintiff's personnel file did not contain any record of verbal or written warnings or discipline. Do Decl. ¶ 2.

### B. Plaintiff Is Denied Lunch Breaks

Beginning in or about March 2014, and continuing until Plaintiff's termination, Plaintiff and other co-workers were denied their regularly scheduled 1-hour long lunch break. Guerrero Depo. at 27:18-28:5; Do Depo. at 277:4-20. Plaintiff was forced to work from 9 am to 5 pm daily with no lunch breaks or other opportunities to rest. *Id.* Plaintiff complained to Los Angeles Station Supervisor Eman Abaza ("Supr. Abaza") and pointed out that lunch breaks are guaranteed under the Benefits section of the Employee handbook. Plaintiff explained that it was unacceptable according to state regulation to not provide regular lunch breaks. Supr. Abaza claimed that regularly scheduled lunch breaks would be bad for business, especially on "flight days." These days are when major flights for Employer departed the airport. Supr. Abaza further insisted that it was company policy to forbid employees from taking lunch breaks on flight days. Do Depo. at 242:11-20. In addition, employees were still forbidden from taking lunch on non-flight days. Do Depo. at 266:6-11. Supr. Abaza also claimed that "as long as a plane is on the ground, we are losing money," as another reason why employees must work without any breaks. Do Decl. ¶ 3. SDF 20.

Lead Agent Sharin Kalim ("Agent Kalim"), confirmed "there was no way you could break away from the job duties" for a lunch break. Kalim Depo. at 18:22-19:15. Like Plaintiff, Agent Kalim complained to her supervisors about the lack of lunch breaks, but no action was taken. *Id.* Regional Manager of North and South America Khalid Alehedeb ("Mgr. Alehedeb") confirmed Supr. Abaza should have been scheduling lunch breaks for the employees. Ex. 2, Alehedeb Depo. 35-38.

### C. Plaintiff's Safety Complaints Are Not Addressed

Many of Plaintiff's complaints directly concerned physical safety in the workplace.

- In or around 2020, Plaintiff complained to Supr. Abaza that containers of toxic chemicals were being rolled around directly on the floor of their office, and not being carried on proper equipment. Plaintiff also reported that some of these containers were kept in the office permanently, and not disposed of properly. Supr. Abaza replied by vaguely claiming that "We'll have someone clean it out." Plaintiff suggested that they commission World Service West, a janitorial service, to clean up the materials. Supr. Abaza did not respond to Plaintiff's suggestion. Guerrero Depo. at 46:12-47:16, Do Decl. ¶ 4. SDF 12
- In or around 2020, Plaintiff also complained that confidential files related to sensitive economic information about Employer's clients were being stored in file cabinets with broken locks. Plaintiff asked if Supr. Abaza could speak with higher-ups to fix these cabinets. Supr. Abaza never took action to address Plaintiff's complaints. Guerrero Depo. at 48:13-16, Do Decl. ¶ 5.

### D. Plaintiff Is Asked To Commit Unlawful Acts

In or around June 2021, Senior Administrative Coordinator Lina Salah ("Cood. Salah") asked Plaintiff to change the number of overtime hours for Agent Zemarian and Operation Agent Roberto Aguilar Jimenez ("Agent R. Jimenez"), claiming they "billed too many hours." Plaintiff refused to do so, as this would be a labor board violation. Do Depo. at 242:4-17. SDF 26

### E. Plaintiff Is Retaliated Against For Requiring and Taking Medical Leave

On or about January 10, 2022, Plaintiff injured her back at work while lifting boxes of paperwork. Exh. 5.; Do Depo. at 232:11-14; 234:11-15. Supr. Abaza did not refer Plaintiff to a worker's compensation physician, nor asked Plaintiff to fill an incident report, nor communicate Plaintiff's complaint to upper management. Abazza Depo. at 42:18-43:9. If an employee reports an injury, that employee must be sent to Employer's worker's compensation physician to determine if the injury was work-related or not. Exh. 2. Beginning on or about January 25, 2022, and continuing until her termination, Plaintiff began wearing a heat pad around her back to deal with the intense pain she felt. Do Decl. ¶ 8.

On or about February 4, 2022, Plaintiff texted Supr. Abaza that "I am having fever, severe back pain and my blood pressure is rising. I am taking emergency pills [referring to Tylenol] from my doctor and try to rest. I won't be able to come today. I will update." Supr. Abaza respond, "That's too bad, but we need some info from you. Mehretab txt you, pls answer him if ur able [sic]." Exh. 3. Despite feeling severely sick, and instructed by her physician to rest, Plaintiff assisted Agent Zemarian for fear of retaliation if she did not. Do Decl. ¶ 9.

Starting with her chiropractor visit on or about February 7, 2022 and continuing with numerous visits with Dr. Washington, Plaintiff was prescribed medical leave. Because of her back injury and high blood pressure, her leave was extended through August 19, 2022. Exh. 6. Plaintiff consistently shared with Supr. Abaza medical certifications placing Plaintiff on leave. She did this electronically or by having her husband hand deliver the doctor's notes to Supr. Abaza. SDF 28

On or about May 9, 2022, after only three months' disability leave, Cood. Salah emailed Plaintiff, claiming that Plaintiff had utilized all her Illness Protection Benefit (also known as "IPB") days. The following day, Cood. Salah emailed Plaintiff again, claiming that Plaintiff did "not have... additional sick leave or similar

benefits to cover the medical time off request provided by your doctor through May 19th [sic].” Cood. Salah then alleged that “The company can no longer hold your position open indefinitely,” despite affirming in the same email that Saudia “underst[ood] that [Do’s] current medical clearance [was] August 19th.” Thus, her leave was not indefinite nor understood by Saudia to be indefinite. They understood her to be cleared to return to work on August 19, 2022. Regardless, Cood. Salah directed Plaintiff to turn in medical certification clearing Plaintiff to return to work within a few weeks. Cood. Salah also informed Plaintiff in this email that Employer would use Plaintiff’s vacation days for any time Plaintiff took off between the May 9, 2022 email and Plaintiff returning to work. Plaintiff never received this second email. SDF 39

On or about May 19, 2022, Plaintiff had a follow-up appointment in which Dr. Washington about Plaintiff’s MRI results. Dr. Washington extended Plaintiff’s disability leave from May 19, 2022, until August 19, 2022. Ex. 6. Later that same day, Plaintiff received an email from Cood. Salah, claiming that if Plaintiff did not turn in the medical certification by May 20, 2022, Plaintiff would be terminated effective May 23, 2022. On May 20, 2022, after Plaintiff’s husband was unable to reach Supr. Abaza in the office, Plaintiff texted the medical certification to Supr. Abaza placing Plaintiff off work until August 19, 2022. Exh. 1. SDF 40

On or about May 22, 2022, Plaintiff emailed Cood. Salah and disagreed to using her vacation days. Plaintiff reminded Cood. Salah that according to section 8.4 on page 31 of the employee handbook, employees received 12 sick days at the start of every year. Plaintiff also raised a variety of issues, such as how often she worked from home unpaid, including training Agent B. Jimenez and assisting Agent Zemarian while she was sick. Plaintiff also emphasized the fact that she never received her monthly uniform allowance. Exh. 1.

On or about May 26, 2022, Cood. Salah emailed Plaintiff, alleging that Plaintiff had used 68 IPB days. Cood. Salah agreed that Plaintiff had a total of 12 sick

days remaining. Cood. Salah threatened that unless Plaintiff was medically released to work by June 16, 2022, she would be terminated on June 17, 2022, after only four months disability leave. Exh. 1 SDF 18

On or about June 24, 2022, Plaintiff received an email from Cood. Salah attaching Plaintiff's termination letter, effective June 23, 2022. In this same email, Cood. Salah claimed that Plaintiff would receive her final paycheck via FedEx that afternoon. Exh. 8. Plaintiff never received her final check. Do Decl. ¶ 10. SDF 44

## II. STANDARD OF REVIEW

"Summary judgment should not be granted unless the evidence cannot support any reasonable inference for plaintiff." *Nazir v. United Airlines, Inc.* (2009) 178 Cal. App. 4th 243, 283. If there is a triable issue as to any material fact, summary judgment must be denied. *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926; FRCP 56(c); CCP §437c(c) (summary judgment may be granted only if "there is no triable issue as to any material fact.") "[V]ery little evidence is required to survive summary judgment in a discrimination case, 'because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by the fact finder upon a full record.'" *Reeves v. Sanderson Plumbing Products, Inc.*, (2000) 530 U.S. 133,138. The Court must determine whether there is a genuine issue for trial and refrain from weighing the evidence to determine the truth itself. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. LEGAL ANALYSIS

### A. FAILURE TO REASONABLY ACCOMMODATE A DISABILITY.

The elements of denial of reasonable accommodations are: (1) the plaintiff has a disability, (2) is qualified to perform the essential functions of the position with reasonable accommodations, and (3) the employer failed to reasonably accommodate the plaintiff's disability. *Wilson v. County of Orange*, (2009) 169 Cal. App. 4th 1185, 1192; Govt. Code § 12940(m).

Saudi had an internal policy of not providing job protected disability leave beyond the approximate six months of potential paid leave. However, FEHA's prohibition of discrimination and retaliation are "nonnegotiable," non-waivable, public policy rights. *Rymel v. Save Mart Supermarkets, Inc*. (2018) 30 CA5th 853 (can't waive public policy FEHA and Labor Code 1102.5 whistleblower claims in MOU). See, Govt. Code 12920; 12940(h); see, *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 844 (2015) (arbitration agreement contrary to public policy unenforceable);

An employer cannot refuse to accommodate a disabled employee based on application of a facially neutral policy without individualized accommodation for those with disabilities. Such a policy supports a verdict of both failure to accommodate and punitive damages. *Roby v. McKesson Corp*., 47 Cal. 4th 686, 713–14 (2009), as modified (Feb. 10, 2010) (attendance policy requiring 24 hour notice of absence did not reasonably accommodate employees whose disabilities periodically flared with less notice).

An employer is generally required to protect a disabled employee's job for 12 months or more so long as it "does not pose an undue hardship on the employer." *Sanchez v. Swissport, Inc.* (2013) Cal. App. 4th 1331, 1338 (citing *Jensen v. Wells Fargo Bank* (2000) 85 Cal. App. 4th 245, 263 (12 months); *Garcia-Ayala v. Lederle Parenterals*, 212 F.3d 638, 648-650 (16+ months); *Hanson v. Lucky Stores, Inc*. (1999) 74 Cal.App.4th 215, 226 (16 mos.); *Ralph v. Lucent Technologies, Inc*., 135 F.3d 166, 171–172 (1st Cir.1998) (12+ mos.) *Criado v. IBM Corp*. (1st Cir. 1998) 145 F.3d 437, 444 (12+ mos.)). Termination of an employee while on disability leave, at a time it is plausible the employee will be medically able to return to work in the future, is sufficient evidence of disability discrimination. *Kimbro v. Atlantic Richfield Co*., 889 F.2d 869, 879 (9th Cir. 1989), *cert. denied*, 498 U.S. 814 (1990); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001).

In *Garcia-Ayala v. Lederle Parenterals*, 212 F.3d 638, 648-650, an employee took significant periods of disability leave over several years, followed by over a year's continuous disability leave. Shortly after the employee's doctor extended the year-long leave to 16 months, the employer terminated the employee. After the termination, the employee's doctor extended the disability another month such that the employee was not released to return to work until after having been disabled for 17 months. The trial court granted the employer's motion for summary judgment on grounds the accommodation sought –extension of the one year's disability leave to 16 months, was not a "reasonable" accommodation as a matter of law. The Court of Appeal reversed on grounds that to avoid its obligation accommodate a disability the employer must, under Govt. Code 12940(m), prove the requested accommodation would constitute an "undue hardship" on the employer. The Court of Appeal found the employer had introduced absolutely no evidence the extension of disability leave, either from one year to 16 months, or from 16 to 17 months, would constitute an "undue hardship" on the employer. Consequently, the Court of Appeal not only reversed the summary judgment the trial court had entered in favor of the employer, but the Court of Appeal actually entered judgment as a matter of law in favor of the employee on the employee's claim for failure to accommodate.

A reasonable accommodation under Govt Code 12940(m) includes job-protected disability leave long after an employee has exhausted their CFRA/FMLA and PDL leave, let alone an internal corporate practice that cannot limit a public policy statute. *See Sanchez v. Swissport* (2013) 213 Cal. App. 4th 1331, 1338 (stating that a woman disabled by pregnancy is entitled to the protections afforded any other disabled employee, specifically disagreeing with the contention that the 4 months provided by the PDL was a cap on the amount of time that would constitute a reasonable accommodation). Yet, Saudia sent Plaintiff a letter stating she had exhausted "all" of her leave and would be terminated if she did not return to work. Ex. 1. Plaintiff was not informed by the email that she may be entitled to additional

time off as a reasonable accommodation for a disability. *Id.* No one at Saudia contemplated giving Plaintiff additional job protection after exhausting FMLA, CFRA, and other paid leave benefits. Abaza Depo. at 43:12-44:12.

Even in a case where the employee "provided no medical records to [Defendant] and did not notify anyone in human resources regarding her condition, no authority supports . . . that either step is essential to establish a claim for disability discrimination." *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal. App. 5th 570, 592.

### B. Defendant Failed to Engage in an Interactive Process

The elements of failure to engage in the interactive process are: (1) plaintiff requested a reasonable accommodation for plaintiff's physical or mental condition; (2) plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made; (3) employer failed to participate in a timely, good faith interactive process; (4) causing plaintiff harm. Cal. Gov't Code §12940(m); *Wilson v. County of Orange* (2009) 169 Cal. App. 4th 1185, 1192. If an employer questions whether the time off is justified by the medical condition, the employer has an affirmative duty to inquire, typically by requesting a doctor's note, per FEHA's federal analogues. *See* 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 1630.14(c); *Swanson v. Morongo Unified School District* (2014) 232 Cal. App. 4th 954, 971 ("Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.'"). "[I]f the process fails, responsibility for the failure rests with the party who failed to participate in good faith." *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal. App. 4th 34, 54.

Here, it was obvious to Saudia that Plaintiff required additional time to recuperate or accommodations to facilitate her return to work. Saudia also never requested additional information from Plaintiff. Saudia never: asked Plaintiff to produce additional medical records in addition to the notes she repeatedly provided from her doctors, requested that Plaintiff clarify any of the doctor's notes she

provided, requested that Plaintiff supplement her doctor's notes with additional information, requested that Plaintiff's doctors provide a medical basis for their beliefs, requested a second medical opinion for Plaintiff's condition, had Plaintiff sign a medical release for her medical records, nor affirmatively reached out to Plaintiff's doctors for further information. Do Depo. at 135:12-20; Salah Depo. at 11:19-22, 11:23-12:1; Abaza Depo. at 37:16-21, 34:14-25, 35:9-12; Alsadoon Depo. at 15:13-2; Alehedeb Depo. at 126:7-9.

If Saudia thought Plaintiff was not medically able to return to work, or was unsure whether further disability leave accommodation was required, Employer was required to engage in the interactive process to seek additional information from Plaintiff and her doctors to determine if Plaintiff was medically able to return to work. See 42 U.S.C. §12112(d)(4);9 C.F.R. § 1630.14(c). Saudia did not do so.

### C. Disability Discrimination

Establishing a prima facie case of discrimination is "not onerous." *Johnson v. United Cerebral Palsy/Spastic Children's Found.* (2009) 173 Cal. App. 4th 740, 754. The elements of disability discrimination are: (1) plaintiff suffered from a disability or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability. *Wills v. Superior Court* (2011) 194 Cal. App. 4th 143, 159–60.

When a plaintiff employee with a disability is terminated due to a "continuing unavailability for work," a reasonable jury could infer that employer's termination instead of accommodation indicated the plaintiff's disability was a motivating favor in the termination decision. *Norris v. Allied–Sysco Food Services, Inc.*, 948 F. Supp. 1418, 1434 (N.D. Cal. 1996). "When an employer discharges an employee for conduct that is caused by the employee's disability, such as absenteeism, then the employer has terminated the employee because of his or her disability." *Gonzalez v. ATI Sys. Int'l, Inc.*, No. B223779, 2011 WL 1902582 at *8 (Cal. Ct. App. May 20,

2011), quoted in *McInteer v. Ashley Distribution Servs., Ltd.*, 40 F. Supp. 3d 1269, 1286–87 (C.D. Cal. 2014). "It is undisputed that Plaintiff's absences resulted from his disability and thus are considered part of the disability. By citing his absences as a basis for termination, Defendants *ipso facto* cited his disability." *See Gonzalez*, 2011 WL 1902582, at *8.

Saudi admits it terminated Plaintiff due to her continuing inability to work due to her disability for a period longer than her IPB benefits. Her termination was explicitly motivated by her disability.

Termination of an employee while on disability leave, at a time it is plausible the employee will be medically able to return to work in the future, is sufficient evidence of disability discrimination. *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989), *cert. denied*, 498 U.S. 814 (1990); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001).

### D. Defendant Retaliated Against Plaintiff for Requesting Accommodations for Disabilities

FEHA prohibits employers from "retaliat[ing] against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." Gov't Code § 12940(m)(2). Plaintiff requested accommodations, including medical leave. *See* 2 Cal. Code Regs. § 11068(c).

An employee's protected activity under FEHA includes any "requests for reasonable accommodations on the basis of . . . disability . . . regardless of whether the request was granted." *Zamora v. Sec. Indus. Specialists, Inc.* (Ct. App. 2021) 285 Cal. Rptr. 3d 809, 856 (noting the California legislature intended to clarify in 2015 that FEHA has "always prohibited retaliation based on a request for an accommodation"). Plaintiff has thus sufficiently pleaded he engaged in protected activity by requesting accommodations. "Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does

not pose an undue hardship on the employer." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

Where termination, or similar adverse employment actions, occur during or follow shortly after the exercise of a protected right, retaliatory intent may be inferred. *Passantino*, 212 F.3d at 507; *Mariani-Colon*, 511 F.3d at 224; *Morgan*, 88 Cal. App. 4th at 69 (holding that causal connection may be demonstrated by the temporal proximity between a protected activity and an adverse employment action). The Ninth Circuit has cautioned against any per se rule for the maximum time between a protected act and a termination as breaking the chain of causation. *Anthoine*, 605 F.3d 740; *Conklin*, 433 Fed. App'x 528 (ten years); *Wysinger*, 157 Cal. App. 4th at 418 (three years); *id.* at 422; *Green*, 192 Cal. App. 4th at 455–56. It is whether the last or most recent protected activity, not the first, are causally connected to the termination. *Sorensen*, 786 F. App'x at 653.

Here, Saudi explicitly terminated Plaintiff for requesting on May 20, 2022, the accommodation of disability leave through August 2019, which Saudi claimed was too long.

### E. No Undue Hardship Defense: The Leave had not Already Become Indefinite by the Time of Termination

Saudi argues Plaintiff should not be allowed to sue for disability discrimination on grounds she was not qualified for the job because her leave was indefinite. However, to prove the affirmative defense of undue hardship, the employer has to prove the leave had become indefinite by the time of the termination; not that it was might become indefinite in the future. "The Court agrees that Johnson has not established that she was a qualified individual when her extended leave *became* indefinite. *Johnson v. Cirrus Educ. Grp., Inc.*, No. 5:20-CV-256 (MTT), 2022 WL 4003871, at *6 (M.D. Ga. Sept. 1, 2022) (emphasis added) ("became" indefinite after numerous extension of the leave with no end in sight, all during the employment).

Analogous caselaw holds that where an employee has a medical condition, is terminated, and then goes on disability for a time due to that medical condition, the employee is entitled to lost wages for the period of unemployment. *Mayer v. Multistate Legal Stud., Inc.*, 52 Cal. App. 4th 1428, 1433 (1997). In *Mayer* the trial court awarded no lost wages for the period the plaintiff was medically disabled from working after termination. The court of appeal reversed and awarded such lost wages, subject only to setoff for disability benefits received at the time. The court reasoned *the employer's wrongful act was the primary cause of the loss of wages* and the employer had not offered the employee reinstatement so *should not be able to take advantage of the fortuitous circumstances interfering with the employee's ability to work after the wrongful termination*. The court also explained the termination placed plaintiff in a materially worse position when the illness struck. The termination deprived the plaintiff of even the opportunity to continue working with an accommodation. The illness would also tend to make it more difficult to find alternate employment. The court reversed and remanded. *Mayer v. Multistate Legal Stud., Inc.*, 52 Cal. App. 4th 1428, 1434–37 (1997).

In *Ahlstedt v. Board of Education* (1947) 79 Cal.App.2d 845, the court awarded lost wages to an employee including during the time the employee was unemployed and too ill to work because the employee was excluded from the position she once had by the act of the employer, not by the illness.

In *Carroll v. Civil Service Com*. (1973) 31 Cal.App.3d 561, the court held the employer liable for lost wages even during the period the employee was in jail after having been terminated on grounds that since the employer had not offered reinstatement, the employer should not be the beneficiary of a fortuitous circumstance arising in the wake of the employer's wrongful termination.

Plaintiff's leave had not already "become" indefinite at the time she was terminated, so the "undue hardship" defense does not apply.

### F. Defendant Retaliated Against Plaintiff for Taking CFRA Medical Leave

"[T]he elements of a cause of action for retaliation in violation of CFRA [are] (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination . . . because of her exercise of her right to CFRA leave." *Dudley v. Department of Transportation* (2001) 90 Cal. App. 4th 255, 261; *Faust*, 150 Cal. App. 4th at 885; CACI 2620; Govt. Code 12945.2(a), (*l*).

2 CCR 11089(a)(2) provides: "It is an unlawful employment practice for an employer, after granting a requested CFRA leave, to refuse to reinstate the employee to the same or a comparable position at the end of the leave, unless the refusal is justified by the defenses stated in section 11089(d)." Subsection (d) provides that reinstatement may be denied if the employer proves the position has been eliminated. Defendant contends the position was filled by another employee. The regulation bars that pretext for refusal to reinstate: "As per (a)(1) of this section, this burden shall not be satisfied if the employee has been replaced or the employee's position has been restructured to accommodate the employee's absence." (2 CCR 11089(d)).

An employer may dismiss the employee on medical leave *only if* that dismissal would have occurred regardless of the employee's request for taking CFRA leave. *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal. App. 4th 509, 520 (affirming judgment for employer where plaintiff's termination was based on unsatisfactory work and misconduct and not their taking leave). Under the federal analog to the CFRA, if the employee taking what should have been FMLA-protected leave is subsequently used by the employer as "a negative factor" "at all" in taking an adverse employment action against the employee, the employer is liable for FMLA interference. 29 CFR § 825.220(c); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125–26 (9th Cir. 2001). A "negative factor" need not rise to the level of even

a "but for" cause of the adverse action where there is a mixed motive. Even if the employer would not have taken the adverse action against the employee in the absence of a legitimate reason, if the use of what should have been characterized as FMLA is a "negative factor at all" in the action, they may be liable. *Hudson v. Home Depot, U.S.A., Inc.*, No. CIV. 1:13-366 WBS, 2015 WL 409672, at *6 & n.10 (D. Idaho Jan. 29, 2015).

So, while Defendant mistakenly insists that CFRA job protection must attach on the day of the alleged retaliation for such retaliation to be illegal, that is demonstrably not the case. Here, there is at least a question of fact as to whether the 3 months of CFRA leave from February through May 2022, in combination with the reasonable accommodation disability leave from May to June 2022, at least 'contributed' to the overall decision to terminate Plaintiff.

### G. Plaintiff States a Claim for Medical Leave Discrimination

The elements of a claim for CFRA discrimination are (1) the employee was qualified for CFRA leave; (2) the decisionmakers knew of the employee's request for, or use of medical leave, and (2) it was denied. *Soria v. Univision Radio Los Angeles, Inc*. (2016) 5 Cal. App. 5th 570, 592; *Avila v. Continental Airlines, Inc*. (2008) 165 Cal. App. 4th 1237, 1248.

CFRA leave is "job protected" leave bearing the right to reinstatement, regardless of whether someone has temporarily filled the position. 2 CCR 11089(a)(2) & (d). The leave Defendant "granted" Plaintiff was not job protected and was not CFRA leave. In October 2021, employer offered Plaintiff a demotion with far lower salary. (Compl. ¶ 38). The CFRA leave Plaintiff took from February to May 2021 was not "job-protected" because Defendant demonstrated by October 2021 that it permanently replaced Plaintiff, leaving only a demoted position.

After Plaintiff was medically released in January 2022, and had been denied return for a few months thereafter, he asked again in April 2022, about at least getting the inferior sales job. HR Molioo then informed Plaintiff that there was never an

actual "offer" and denied that, or any other, position. This confirms, or at least raises a fact question, as to whether Defendant had already decided by October 2021 Plaintiff would not be allowed to return to work. (Compl. ¶ 51.)

**H. DEFENDANT RETALIATED FOR OPPOSING FEHA VIOLATIONS (CLAIM 8)**

The elements of a FEHA retaliation claim are: (1) the employee opposed harassment, discrimination or retaliation; (2) the employer thereafter subjected the employee to an adverse employment action, and (3) a causal link exists between the protected activity and the employer's actions. *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal. 4th 1028, 1044; 2 CCR 11021. An employee who opposes conduct that the employee reasonably believes to constitute unlawful discrimination is protected from retaliation, even if the opposed conduct was not legally sufficient to establish a FEHA violation. *Miller v. Department of Corrections* (2005) 36 Cal. 4th 446, 474.

Defendant's motion makes a brief reference to "handwaving" about opposing FEHA violations in the amended complaint. "But employees need not explicitly and directly inform their employer that they believe the employer's conduct was discriminatory or otherwise forbidden by FEHA." *Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal. App. 5th 1028, 1046–47 (citing *Yanowitz*, 36 Cal. 4th at 1046). "'[A]n employee is not required to use legal terms or buzzwords when opposing discrimination. The court will find opposing activity if the employee's comments, when read in their totality, oppose discrimination.'" *Id.* (citing *Yanowitz*, 36 Cal. 4th at 1047). "We do not believe employees should be required to elaborate to their employer on the legal theory underlying the complaints they are making, in order to be protected by the FEHA." *Id.* (citing *Miller*, 36 Cal.4th at 474). "[C]ourts should recognize that plaintiffs have limited legal knowledge." *Id.* (citing *Miller*, 36 Cal. 4th at 474). "FEHA does not protect 'only the impudent or articulate. The relevant question . . . [is] whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.'" *Id.* (citing *Yanowitz*, 36 Cal. 4th

at 1047). "Further, FEHA need not actually prohibit the conduct of which the employee complains. All that is required is an employee's good faith belief that the conduct was unlawful. *Id.* (citing *Miller*, 36 Cal. 4th at 473).

### I. FEHA and Whistleblower Retaliation for Opposing Conduct in Violation of FEHA, the Labor Code and OSHA

The elements of a Labor Code 1102.5(b) claim are: (1) an employee discloses information (2) the employee reasonably believes discloses a regulatory or statutory violation; (3) to a person with authority over the employee's job, or with responsibility to fix the apparent violation; (4) the employer subjects the employee to an adverse action, and (5) there is a "causal link" between the two. *See Patten v. Grant Joint Union High Sch. Dist*. (2005) 134 Cal. App. 4th 1378, 1384.

Plaintiff repeatedly complained about the denial of meal breaks; a violation of Labor Code 512. She complained about storage and mishandling of hazardous chemicals in violation of what she reasonably understood to be OSHA violations.

The elements of a FEHA retaliation claim are: (1) the employee opposed harassment, discrimination or retaliation; (2) the employer thereafter subjected the employee to an adverse employment action, and (3) a causal link exists between the protected activity and the employer's actions. *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal. 4th 1028, 1044; 2 CCR 11021.

Section 1102.5 applies to retaliation for disclosures of any statutory or regulatory violation, including FEHA. *Andrews v. Pride Industries* 213 F.Supp.3d 1288, 1308 (E.D. Cal. 2016), *amended and superseded on other grounds*, 2017 WL 11980; *Morgan*, 88 Cal. App. 4th at 62. Plaintiff's complaints of failure to accommodate her disability, to engage in the interactive process, and discriminating against her based on her disabilities support  retaliation claims for requesting and using accommodations, taking medical leave, and opposing discrimination support his Labor Code 1102.5 whistleblower claim.

Indeed, the threshold for finding prima facie whistleblower retaliation is even lower than the "substantial factor" applicable in FEHA cases under *Harris v. City of Santa Monica* (2013) 56 Cal. 4th 203, 225. Under CACI 2513, a "substantial motivating reason" in FEHA merely means "more than trivial." A "contributing factor" is even less than a "substantial motivating reason." CACI 4604. That is a low threshold Plaintiff's previous allegations easily satisfy.

**J. Defendant Failed to Prevent and Stop Discrimination (Claim 9)**

This claim is derivative of the claims for discrimination and retaliation. It's elements are: (1) plaintiff was subjected to discrimination; (2) employer failed to take all reasonable steps to prevent discrimination; (3) plaintiff was harmed; and (4) employer's failure to take all reasonable steps to prevent the harassment was a substantial factor in causing plaintiff's harm. Cal. Gov't. Code § 12940(k); *Trujillo v. North County Transit Dist.* (1998) 63 Cal. App. 4th 280, 286. "Reasonable steps" include investigating complaints of discrimination or retaliation. *See Cal. Fair Emp. & Hous. Comm'n v. Gemini Aluminum Corp.* (2004) 122 Cal. App. 4th 1004, 1024.

**K. Wrongful termination**

The elements of a wrongful termination claim are: (1) the termination of an employer-employee relationship, (2) that the violation of public policy was a substantial motivating reason for discharge, (3) that Plaintiff was harmed, and (4) that discharge was a substantial factor in causing Plaintiff's harm. *Yau v. Santa Margarita Ford, Inc*. (2014) 229 Cal. App. 4th 144, 154; CACI 2430. California recognizes public policy violations which "generally fall into four categories" of plaintiff conduct: "(1) refusing to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory right or privilege; and (4) reporting an alleged violation of a statute of public importance." *Gantt v. Sentry Insurance* (1992) 1 Cal. 4th 1083, 1090–91 (citations omitted).

**L. Age Discrimination**

Regarding her age discrimination claim, Plaintiff does offer evidence of age-based animus on the part of Alehedeb, specifically in that other, younger employees were offered a severance package where she was not. Do Depo. at 258:17-259:5. There is thus a triable issue of fact as to her age discrimination claims.

### M. FAILURE TO PREVENT OR STOP DISCRIMINATION

This claim is derivative of the claims for discrimination and retaliation. It's elements are: (1) plaintiff was subjected to discrimination; (2) employer failed to take all reasonable steps to prevent discrimination; (3) plaintiff was harmed; and (4) employer's failure to take all reasonable steps to prevent the harassment was a substantial factor in causing plaintiff's harm. Cal. Gov't. Code §12940(k); *Trujillo v. North County Transit Dist.*(1998) 63 Cal. App. 4th 280, 286.

Here, Saudia's failures are obvious. Not only were employees unaware of any HR personnel to whom they could report potential violations to, Saudia admitted they have no department that conducts investigations into allegations of discrimination. Pansacola Depo. at 25:17-19. Furthermore, non-HR supervisors who did receive complaints from Plaintiff and others did nothing to address these complaints. Do Depo. at 91:21-92:1.

### N. FAILURE TO GRANT MEAL OR REST BREAKS

When an employer fails to provide a required meal or rest break, it is liable for one additional hour of pay at the aggrieved employee's regular rate of compensation. Cal. Lab. Code § 226.7. California law requires that employers provide a 30-minute unpaid meal break for every five hours worked, and a paid 10-minute rest break for every four hours worked. "If the employer fails to provide a required meal period or rest break, it must compensate the employee with a "premium"—an *additional* hour of pay for each workday during which a violation occurred." *Arce v. The Ensign Group, Inc.* (2023) 96 Cal. App. 5th 622, 629 (emphasis added). Thus, despite Defense's contentions, Plaintiff was entitled to an *additional* hour of pay, beyond the pay she was already entitled to for the hours that she worked. Plaintiff is recorded as

having worked eight hours, and being paid for eight hours of work; however, due to the failure of Saudia to provide lunch and rest breaks (which they do not deny), Plaintiff **was entitled to nine hours** of pay on days she was denied a break, which was every day. This stands to reason, as, otherwise based on the Defense's interpretation of the law, employers would never be incentivized to provide breaks and could force employees to work eight hours straight and only pay them for those eight hours of work, as Saudia did here.

### O. Punitive Damages

In *Roby v. McKesson Corp*. (2009) 47 Cal.4th 686, 714 n. 11, the California Supreme Court held the corporation's adoption of a discriminatory policy, and the use of that policy by mid- level managers (not managing agents) to terminate the plaintiff, supported the jury's award of punitive damages against the corporation: "With respect to the discrimination claim, employer McKesson's wrongdoing was limited to its one-time decision to adopt a strict attendance policy that, in requiring 24–hour advance notice before an absence, did not reasonably accommodate employees who had disabilities or medical conditions that might require several unexpected absences in close succession. McKesson's act of discharging Roby (including the perfunctory investigation that accompanied it) was simply an application of this attendance policy in accordance with its terms. The jury found that McKesson's adoption of this flawed attendance policy constituted "oppression" or "malice," justifying an award of punitive damages.11 (Civ.Code, § 3294, subd. (a).)

> n.11 We do not mean to suggest that in all FEHA discrimination cases involving attendance policies like the one here at issue, an award of punitive damages will always be supportable based on the employer's mere adoption of such a policy. It was the application of McKesson's rigid attendance policy to terminate Roby that ultimately gave rise to McKesson's liability for her wrongful discharge and the related punitive damages, not the mere adoption of the policy itself. But with regard to

> the further assessment, under *State Farm*, of the degree of reprehensibility of McKesson's conduct for the specific purpose of determining the maximum constitutionally—allowable award of punitive damages in this case, a broader focus is appropriate. Because the midlevel managers who applied the strict attendance policy to terminate Roby lacked discretion to deviate from it under its very terms, we find the adoption of the policy itself most relevant to an assessment of the overall degree of reprehensibility of McKesson's misconduct."

In the instant case, Saudia terminated Plaintiff pursuant to their policy that when an employee exhausts paid leave, the employee has no other form of job-protected leave available; not even as a "reasonable accommodation" for a disability. Consequently, Saudia terminated Plaintiff pursuant to a well-established unlawful policy, and thus punitive damages are warranted, or at least raise a triable issue.

## I. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the court deny both Defense's motion for summary judgment and partial summary judgment.

DATED: July 11, 2024

LYON LAW PC
*/s/ Geoffrey C. Lyon*
By: Geoffrey C. Lyon
Attorney for Plaintiff,
THUHONG DO

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: Lyon Law; 3605 Long Beach Blvd., Ste. 311
Long Beach, CA 90807. On the date of execution of this proof of service I caused to be served on interested parties in this action the attached:

**PLAINTIFF DO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SUMMARY JUDGMENT**

by emailing and/or placing true and correct copies thereof in sealed envelope(s) addressed as follows:

| | |
|---|---|
| NORTON ROSE FULBRIGHT US LLP<br>JAMILA S. MENSAH (admitted pro hac vice)<br>1550 Lamar, Suite 2000<br>Houston, TX 77010<br>Telephone: (713) 651-5151<br>Facsimile: (713) 651-5246<br>jamila.mensah@nortonrosefulbright.com<br>Attorney/s for Defendant SAUDI ARABIAN AIRLINES CORPORATION dba SAUDIA | DEBORAH F. BIRNDORF (BAR NO. 179823)<br>PHILLIP R. DI TULLIO (BAR NO. 324267)<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, California 90071<br>Telephone: (213) 892-9200<br>Facsimile: (213) 892-9494<br>phillip.ditullio@nortonrosefulbright.com<br>debbie.birndorf@nortonrosefulbright.com<br>Attorney/s for Defendant SAUDI ARABIAN AIRLINES CORPORATION dba SAUDIA |

**XX BY E-MAIL**

**BY MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

**XX STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed at Long Beach, California on July 11, 2024.

*/s/ Geoff Lyon*