**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THUHONG DO,<br>Plaintiff,<br>v.<br>SAUDI ARABIAN AIRLINES CORPORATION, et al.<br>Defendants. | Case No. 2:23-cv-00135-MRA-RAO<br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT [ECF 44]** |

Before the Court is Defendant Saudi Arabian Airlines Corporation's ("Saudia") Motion for Summary Judgment, or Alternatively, Partial Summary Judgment (the "Motion"). ECF 44. The Court read and considered the Motion and held a hearing on August 1, 2024. ECF 47. For the reasons stated herein, the Court **DENIES IN PART AND GRANTS IN PART** the Motion.

//

//

//

//

//

# I. BACKGROUND[1]

## A. Do's Employment at Saudia and Saudia's Relevant Employment Policies

In March or April 2014, Khalid Alehedeb, then-U.S. Manager of Operations of Defendant Saudia, interviewed Plaintiff Thuhong Do and made the decision to hire her as an Administrative Coordinator/Station Administrator. ECF 46-1 ("RSSUF") 1. Do was 52 years old at the time. *Id.* 2. In her role as Station Administrator, Do was responsible for administrative work at the Los Angeles Airport ("LAX") station. *Id.* 3. She also managed employee documentation and served as an administrative liaison between Saudia and LAX administrators. *Id.* In 2019, Saudia promoted Do to the role of Senior Administrative Coordinator. *Id.* 5. Do reported to Eman Abaza, the LAX Station Supervisor. *Id.* 6.

Saudia employed Do as a non-exempt, hourly, "at-will" employee. *Id.* 9, 20. As a Saudia employee, she was subject to Saudia's Terms & Conditions of Employment – Handbook for Local Employees in the United States (the "Handbook"). *Id.* 7. The Handbook contains policies related to employment status, equal employment opportunities, anti-discrimination, work schedules and compensation, and time off. *Id.*

---

[1] The Court has reviewed and considered all evidence in the record, including declarations and documentary evidence. Unless otherwise indicated, the facts set forth in this section are taken from Defendant's Response to Plaintiff's Separate Statement of Uncontroverted Facts (ECF 46-1), which encapsulates Defendant's Statement of Uncontroverted Facts (ECF 44-3) and Plaintiff's Separate Statement of Uncontroverted Facts (also known as a "Statement of Genuine Disputes of Material Fact") (ECF 45-2). District courts are not required to make findings of fact on a motion for summary judgment. Fed. R. Civ. P. 52(a)(3). Instead, the court "may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to the Statement of Genuine Disputes." L.R. 56-4; *see also* Fed. R. Civ. P. 56(c).

Saudia maintains written policies against harassment, discrimination, and retaliation. *Id.* 10, 12. Saudia directs employees to report discrimination or harassment to management or human resources ("HR"). *Id.* 11. Do acknowledged receipt and understanding of the Handbook upon hire on April 22, 2014. *Id.* 8. During Do's employment, Saudia offered leave benefits to all full-time employees, including vacation and sick leave, as well as benefits under its Illness Protection Benefit ("IPB") policy. *Id.* 13. Regular, full-time employees accrued paid vacation monthly based on years of service, with a maximum cap of 45 days, as well as 12 days of paid sick leave every calendar year. *Id.* 14, 15. Saudia also permits employees to take unpaid leave under certain circumstances. *Id.* 18.

Saudia's IPB policy "provides up to one hundred and eighty (180) days [IPB] to eligible employees who need to miss work" for more than 10 continuous workdays due to an illness or injury. ECF 44-4 (Alehedeb Decl.) ¶ 11, Ex. F (ECF 44-12) at 37. Saudia's Handbook states:

> The benefits provided under th[e] [IPB] policy are income replacement benefits and are not leave benefits. If you receive [IPB], you are not automatically eligible to be reinstated in the position you held prior to your absence []or an equivalent position, *unless* you are on an approved leave of absence that provides for such reinstatement, consistent with Saudia policy and applicable law. If you qualify for benefits under this policy and qualify for leave under another Saudia policy and/or applicable law, your absence will count towards your maximum benefit and leave under all applicable Saudia policies and laws.

ECF 44-12 at 37.

Regular, full-time employes are eligible to accrue IPB immediately upon employment at a rate of one day per full month of continuous service, with a maximum cap of 12 days per year. RSSUF 16. Saudia permits employees to carry over unused IPB into the next calendar year, up to a maximum cap of 180 days. *Id.* To qualify for IPB, the Handbook provides that an employee must be eligible for workers' compensation, if the qualifying injury or illness is a work-related condition, or the applicable state disability

insurance program, if the illness or injury is not work related.[2] ECF 44-12 at 38. The Handbook reiterates that "employees receiving [IPB] are ***not*** automatically eligible for reinstatement upon exhaustion of benefits. However, Saudia generally desires to reinstate employees following an absence in which [IPB] was provided, unless, in Saudia's sole discretion, it is determined that business needs require Saudia to fill the position during such absence." *Id.* at 39. If an employee is reinstated, Saudia requires the employee to submit a verification from their physician confirming their ability to return to work. *Id.*; RSSUF 16.

Do was assigned to work 35 hours per five-day workweek.[3] RSSUF 20. As a full-time, non-exempt employee, she was entitled to a total of one hour of uninterrupted break time per workday. *Id.* 21. Saudia's written meal break policies permit an employee who is unable to take a meal break at the normal time due to work requirements to take the break at a different time. *Id.* 22. Do's payroll records reflect that she was paid for 86.63 hours

---

[2] Despite this language, Saudia did not require Do to apply for workers' compensation or disability benefits to make use of her IPB. RSSUF 17. Plaintiff disputes that Saudia in fact waived this requirement, but also does not dispute that Saudia allowed her to utilize IPB even though she did not apply for workers' compensation or disability benefits until after the termination of her employment. *See* Do Depo. at 63:23-64:4 ("Q: And again, same – you continued to be compensated the same as if you had been working? A: . . . . It took out from my vacation and my IPB, which is illness protection plan, that I – I saved up those day."), 97:15-98:21.

[3] Plaintiff contends that she was "assigned to work that far exceeded [35] hours per five-day work week, including being required to work through lunch breaks," and that she "worked eight hours a day during her shifts, not seven hours." RSSUF 20. This statement is not supported by the record. Plaintiff testified that she worked seven hours per day, exclusive of meal breaks, five days per week. Do Depo. at 29:7-21. She further testified that she was paid for eight hours per shift, even though she was only assigned to work seven hours. *Id.* 31:10-12, 267:16-18, 269:2-10, 270:1:20. Moreover, Plaintiff's time records do not substantiate her contention that she regularly worked more than 35 hours per day. *See* Alehedeb Decl. ¶ 24, Ex. I (ECF 44-15) (generally showing that Do "clocked-in" and "clocked-out" within 8 hours every shift).

every two-week pay period. *Id.* 23. Do manually recorded her daily work hours in a logbook for the duration of her employment, except during a brief period when Saudia transitioned to an electronic timekeeping system. *Id.* 24. The time records reflect notations on days where Do did not take a break or missed work for any reason.[4] *Id.* 25. The only complaint that Do made about her compensation was in October 2021, when she was on a COVID-related furlough and reported that her paycheck was short $200-300.[5] *Id.* 26.

### B. Do's Medical Releases from Work, Saudia's Denial of Further Extension of Medical Release, and Do's Termination

Do suffered a back injury while working for Saudia in January 2022. *Id.* 27. On February 4, 2022, Do notified her supervisor that she was unable to work due to her medical condition. *Id.* 28. At her first medical appointment on February 7, 2022, Dr. Tuan D. Nguyen, a chiropractor, recorded that Do suffered from severe pain in her lower back and directed that she be excused from work and sitting excessive periods of time until February 18, 2022. *Id.* 29, 30. On February 18, 2022, Dr. Nguyen noted that Do suffered from severe pain in her lower back "caused by disc disease" and directed that she be excused from work until March 31, 2022. *Id.* 31. On March 31, 2022, a new medical provider, Dr. Robert Washington, stated that Do "require[d] a medical leave of absence" until April 14, 2022. *Id.* 36. On April 14, 2022, Dr. Washington again reported that Do "require[d] a

---

[4] Plaintiff states that her time entries were "ultimately overseen, and edited, by her supervisor," but does not controvert Defendant's statements that Do logged her hours worked and that the time records contain notations on days where she did not take a break or when she missed work. RSSUF 24, 25.

[5] Plaintiff states that she "complained repeatedly and as early as 2014 about not receiving a uniform allowance," "frequently advocated for her fellow employees' rights regarding wages," and "complained about being forced to change the working hours of another employee . . . ." RSSUF 26. None of these statements raise a genuine dispute as to Defendant's statement that Do made only one complaint *as to her compensation* during her employment with Saudia. *Id.*

medical leave of absence" until May 19, 2022. *Id.* 37. Dr. Washington did not provide any supporting details regarding Do's condition in either note. *Id.* 36, 37.

On May 9, 2022, Lina Salah, a Senior Coordinator/Administrator, notified Do that she would fully exhaust her paid sick leave and all 68 days of accrued IPB by May 12, 2022.[6] *Id.* 39. The next day, Salah sent Do a follow-up email, informing her that Saudia would accommodate Do by allowing her to utilize her accrued paid vacation time to cover her subsequent medical-related absences from May 13 to 19, 2022. *Id.* Salah's May 10, 2022, email further explained that Saudia could not hold her position open indefinitely. *Id.* She directed Do to provide a certification from her doctor confirming her ability to return to work by May 20, 2022. *Id.*

Do responded to Salah's email on May 18, 2022, requesting confirmation that Salah was a designated HR representative for Saudia's United States operations. *Id.* 40. Salah responded to Do's email the following day, clarifying Saudia's position with respect to Do's return to employment and informing Do that she is the designated HR representative and administrator under Alehedeb. Alehedeb Decl. ¶ 42, Ex. P (ECF 44-22) at 4-5. In her email, Salah explained that Do was sent a notice regarding her return to work on May 10, 2022, that Do did not respond or reach out until May 18, 2022, and that Do failed to provide the work authorizations set forth in Salah's earlier email. *Id.* On May 19, 2022, Dr.

---

[6] Defendant states that Salah was the designated HR representative for Saudia's United States operations in 2022. RSSUF 39. Plaintiff responds that Salah was not known to employees, including herself, as a designated HR representative. RSSUF 39, 19. Defendant does not cite any evidence in the record substantiating that Salah was the designated HR representative in 2022. To the contrary, the record reflects that Saudia last had a designated HR manager for its United States operations in 2018. Mensah Decl. ¶ 3, Ex. B. (ECF 47-8 (Alehedeb Depo.)) at 30:17-24. And in her initial May 10, 2022, email to Do, Salah does not identify herself as the designated HR representative. ECF 45-1 (Do Decl.) ¶ 11 at 4, Ex. 1 at 10-11. Her signature block in that email reflects that her title was "Senior Coordinator, Administrator" and as "Manager Saudia USA & Canada, WAS, US." *Id.* at 11.

Washington issued a note, stating that Do "require[d] a medical leave of absence" from May 19, 2022, to August 19, 2022. *Id.* 38. Dr. Washington did not provide any supporting details or explanations for his diagnoses.[7] *Id.*

Do responded to Salah on May 19, 2022, stating that she never received Salah's May 10, 2022, email, and requesting that it be resent. ECF 44-22 at 4. In her response, Do further stated:

> [I]n order for me to return to work after May 19th, my doctor has to evaluate my health condition and he has to have enough time to do so. For you [sic] information, I had appointment with my doctor today (05/19/3022) [sic], and also had result of my MRI, my doctor didn't release me back to work; instead, he continues to take me off work for another 3 months. My husband will deliver doctor note and result of my MRI to my supervisor Iman Abaza tomorrow, when miss Abaza is available at Saudia office in airport.

*Id.*

On May 21, 2022, Do sent a follow-up email requesting an explanation of "the extensive leave of absence and multiple accommodations" that Saudia has provided her and contesting Salah's leave calculation. *Id.* Do expressed:

> You are also forcing me to ask my doctor to write a release back to work note, before he even has chance to evaluate my health condition . . . , in this case, he continue [sic] to take me off and sending me to pain management for

---

[7] Plaintiff does not dispute Defendant's statements that Dr. Washington did not provide any details as to Do's condition in the March, April, and May 2022 doctor's notes but raises that "[n]o one from Saudia ever requested additional details regarding Do's condition, nor did they indicate that her doctor's notes were insufficient in any way." RSSUF 36, 37, 38.

> further treatment based on the result of my MRI, which I chose not to provide, because it is a confidential document, and I would like to keep it for record.[8]

ECF 44-22 at 2. Do further asked to "know what is the accommodations I got from Saudia, why my hard earned vacation was deduct to pay for my sick days. And if any reason you can't use my remaining sick days, kindly explain." *Id.* at 3.

On May 26, 2022, Salah replied to Do regarding her questions about "leave usage, balances and your return to work/employment status." ECF 44-22 at 9. Salah stated that "Saudia has now credited your absence record for three days of leave . . . as COVID leave days . . . ." *Id.* She further stated that "Saudia granted you leave for your medical condition and repeatedly extended your leave, which you were compensated for under the IPB policy." *Id.* She then provided Do with Saudia's calculation of her use of leave and IPB benefits. *Id.* By those estimates, Do had available through May 2022 68 IPB days and 12 sick days, and she exhausted those benefits by May 26, 2022. *See id.* Salah stated to Do that based on the foregoing, "you have received and exceeded the 12 weeks unpaid FMLA leave (or 60 days) if such leave was applicable here." *Id.* at 10. She indicated that Do would accrue 12.825 unused vacation days by the end of May. *Id.* She acknowledged that Do's doctor had not permitted her to return to work until August 19, 2022, and then stated, "As much as Saudia would like to hold open your position until that time, the company must move forward with business needs and is unable to hold your position through this date." *Id.* She then offered Do a final ultimatum:

> Based on the dates of used accrued leave as described above, and the potential use of your accrued vacation for any additional absences through June 16,

---

[8] Defendant states that based on her May 21, 2022, email, Do "expressly refused to provide medical information to support her leave requests, such as her MRI results." RSSUF 40. This statement is in reasonable dispute, because, as Plaintiff notes, neither Salah nor anyone else from Saudia affirmatively requested additional medical information from Do. *Id.*

> Saudia can make one final extension of the date of your return to work through June 16, 2022 if you agree to apply and use your accrued vacation. In this case you would be expected to return to work, with or without reasonable accommodation, subject to proof and submission of required medical documentation. We understand that your current medical clearance is August 19th and that at this time you are unable to return to work. If this remains the case, we will move to fill the open position and your employment will be terminated effective June 17, 2022. In this case, you are welcome to apply for any open position at Saudia for which you are qualified once you are cleared to work in the future.

*Id.* Salah requested confirmation from Do whether she approved using her vacation days to extend her leave or preferred to treat the period from May 26 through June 16, 2022, as an unpaid leave period. *Id.* She reiterated in concluding her email, "At any rate, this would be the final leave extension period that the company can provide." *Id.*

On May 27, 2024, Do responded to Salah's email, stating, "I would like to use my 38 hours or 38/8=4.75 days of unused comp. time to cover 05/27, 05/31, 06/01, 06/02, and part of 06/03, and then use my 12.825 days of my vacation for days after." *Id.* at 9. On May 31, 2024, Salah responded to Do's email, providing a recalculation of her benefits and usage. *Id.* at 11. Specifically, Saudia credited Do with 38 comp hours and 14.075 vacation days to include her June accrual. *Id.* Salah revised Do's expected return to work to June 23, 2022, stating that notwithstanding her medical clearance date, if Do did return to work by that date, "[her] employment will be terminated effective June 24, 2022." *Id.*

On June 8, 2022, Do responded to Salah's email, requesting that her remaining 6.6 hours of accrued vacation time be included in her final paycheck. *Id.* at 14; RSSUF 44. Saudia understood that, as of June 23, 2022, Do was not cleared to return to work until August 19, 2022. ECF 44-22 at 10, 11; *see* RSSUF 47. In consultation with HR and legal counsel, Alehedeb made the decision to recommend termination of Do's employment. RSSUF 50. On June 23, 2022, Saudia sent Do a letter, signed by Alehedeb, informing her

of the termination of her employment.[9] *Id.* 51. The termination letter informed Do, "[a]s reviewed with you in previous correspondence, you have used all available leave of absence allotment and the company is unable to continue to hold your position open through your doctor's current medical leave notification of August 19, 2022." Alehedeb Decl. ¶ 43, Ex. Q (ECF 44-23) at 2.

In total, Do was out on leave from February 4, 2022, to June 23, 2022.[10] RSSUF 53. Saudia compensated Do at full pay for the duration of her leave. *Id.* 54. Saudia was not required to hire a temporary employee or pay any other employee overtime to take on Do's job duties. ECF 44-5 ¶ 3, Ex. B. (Alehedeb Depo., ECF 47-8) at 19:17-19, 100:13-22. However, it had to redistribute her job responsibilities. *Id.* at 99:6-16 (Q: Okay. And did somebody fill in for Ms. Do during the time she was using sick days in that time period? A: I mean with a lack of knowledge that Ms. Do has for that function she's doing, it wasn't easy for us to fill in the position. So some of the work was done locally at the station. Some of it has to be given to our league headquarters to handle the payment to handle the entries of the system. Some has been given to JFK as the manager of operation located in JFK to handle some of it."); *see also* ECF 44-5 ¶ 4, Ex. C (Abaza Depo., ECF 44-9) at 89:8-14. In late 2022, following Do's termination, Saudia decided to open a Station Admin position at its JFK station. RSSUF 49; *see also* Alehedeb Depo. at 101:8-102:6. By the end of 2022, Saudia transitioned most of the LAX Station Admin duties to its JFK station. RSSUF 49. In 2023, Saudia hired a new Station Admin at its JFK station. *Id.*

---

[9] The termination letter is dated June 24, 2022. Alehedeb Decl. ¶ 43, Ex. Q (ECF 44-23) at 2. It is undisputed, however, that the letter was *sent* to Do on June 23, 2022. *See* RSSUF 51.

[10] Saudia alleges that Do remained out on leave for 139 days. RSSUF 53. This statement is incorrect. The record reflects that Do was out on paid leave for 68 IPB days, 12 sick days, 14 vacation days, three COVID-19 days, and two comp days, or in total 99 workdays. ECF 44-22; RSSUF 53.

### C. Procedural History

Plaintiff filed this case against Defendant Saudia and Does 1-10 in Los Angeles County Superior Court on November 14, 2022. ECF 1-1. Saudia removed the action to federal court on January 9, 2023. ECF 1. Plaintiff alleges the following claims against Defendant: (1) wrongful termination in violation of public policy, (2) medical leave retaliation in violation of the California Family Rights Act (the "CFRA"), (3) medical leave discrimination in violation of the CFRA, (4) retaliation for requesting a reasonable accommodation in violation of the California Fair Employment and Housing Act (the "FEHA"), (5) failure to engage in the interactive process in violation of the FEHA, (6) failure to reasonably accommodate disability in violation of the FEHA, (7) disability discrimination in violation of the FEHA, (8) retaliation for opposing discrimination in violation of the FEHA, (9) failure to prevent retaliation and discrimination in violation of the FEHA, (10) whistleblower retaliation in violation of the California Labor Code ("CLC"), (11) failure to provide meal periods under the CLC, (12) failure to provide rest breaks under the CLC, and (13) age discrimination in violation of the FEHA.

On June 20, 2024, Defendant timely filed the instant Motion. ECF 44. Plaintiff untimely filed her Opposition to the Motion on July 11, 2024.[11] ECF 45. Defendant filed its Reply on July 25, 2024. The Court held a hearing on the Motion on August 1, 2024. ECF 47.

---

[11] The Court's Civil Trial Order, issued on April 4, 2024, requires motions for summary judgment to be noticed, served, and filed no later than 42 days before the hearing date, oppositions to be filed no later than 28 days before the hearing date, and replies no later than 21 days before the hearing date. ECF 42 at 6-7. Because Defendant's Motion was noticed for hearing on August 1, 2024, Plaintiff's Opposition was due on July 4, 2024. Local Rule 7-12 provides that a court may decline to consider any memoranda not filed within the deadline, but motions for summary judgment may not be granted solely based on the failure to file an opposition. The Court thus considers Plaintiff's untimely Opposition. Plaintiff's Counsel is directed to carefully review the Court's procedures and admonished that any subsequent late filing may be grounds for sanctions. L.R. 7-12, 7-13.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Entry of judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Material facts are those which may affect the outcome of the case." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008); *Anderson*, 447 U.S. at 248. "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Cartrett*, 477 U.S. 317, 323 (1986). Where the moving party does not bear the burden of proof at trial, it need only show that "there is an absence of evidence to support the nonmoving party's case" to discharge its burden. *Id.* at 325. Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc). The court must grant summary judgment for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *Groh v. Ramirez*, 540 U.S. 551, 562 (2004). However, "facts must be viewed in the light most

favorable to the nonmoving party only if" the dispute as to those facts is "genuine." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). And a plaintiff's claims do not survive summary judgment where merely a "scintilla of evidence" supports them. *Anderson*, 477 U.S. at 252. Rather, "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than a "metaphysical doubt" to establish a genuine dispute of material fact).

## III. DISCUSSION

### A. The CFRA Claims (Claims 2 and 3)

Plaintiff alleges that Defendant violated the California Family Rights Act (the "CFRA") by (1) discouraging and denying her medical leave and (2) taking adverse employment actions against her in retaliation for exercising her right to medical leave. ECF 1-1 ¶¶ 79-88.

The CFRA "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." *Nelson v. United Techs.*, 74 Cal. App. 4th 597, 606 (1999). The statute and its implementing regulations make it an unlawful employment practice for an employer of 50 or more persons to "refuse to grant a request by any [qualified] employee . . . to take up to a total of 12 workweeks in any 12-month period for family care and medical leave." Cal. Gov't Code § 12945.2(a); 2 Cal. Regs. Code § 11088(a). "An employee who takes CFRA leave is guaranteed that taking leave will not result in a loss of job security or in other adverse employment actions." *Choochagi v. Barracuda Networks, Inc.* 60 Cal. App. 5th 444, 454 (2020) (quoting *Neisendorf v. Levi Strauss*, 143 Cal. App. 4th 509, 516-17 (2006)); Cal. Gov't Code § 12945.2(a); *see also* 2 Cal. Regs. Code § 11089(a). Furthermore, it is unlawful for an employer to "interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section." Cal. Gov't Code § 12945.2(q). The CFRA "closely parallels" its federal counterpart, the Family and Medical Leave Act of 1993 ("FMLA"). *Rogers v. Cnty. of Los Angeles*, 198 Cal. App. 4th 480, 487 (2011).

### ***1. Interference (Claim 3)***

A CFRA interference claim "consists of the following elements: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights." *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 601 (2016) (quoting *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 250 (2016)). Defendant contends that Plaintiff's CFRA interference claim fails as a matter of law because she was granted and exhausted CFRA qualifying leave and was not entitled to further CFRA leave. ECF 44-2 at 23. The uncontroverted evidence does not bear out this conclusion.

The CFRA's implementing regulations provide that a request to take CFRA leave is reasonable if it complies with notice requirements and is accompanied by a certification from a health care provider. 2 Cal. Regs. Code § 11088(b)(2). To request leave under the CFRA or the FMLA:

> [A]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA , to meet the notice requirement; however, the employee must state the reason the leave is needed . . . . The employer should inquire further of the employee if necessary to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave.

Cal. Regs. Code, tit. 2, § 11091(a)(1)). The regulations further provide: "Under all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying, based on information provided by the employee . . . , and to give notice of the designation to the employee." Cal. Regs. Code, tit. 2, § 11091(a)(1)(A). "Employers may not retroactively designate leave as CFRA leave after the employee has returned to work, except with appropriate notice to the employee and

where the employer's failure to timely designate does not cause harm or injury to the employee." *Id.* § 11091(a)(1)(B).

It is undisputed that Do first told her supervisor that she was unable to work due to her medical condition on February 4, 2022, and that on February 7, 2022, Do's chiropractor noted that she suffered from severe lower back pain and that she needed to be excused from work until February 18, 2022.[12] RSSUF 28, 30. At that point, it became Saudia's "responsibility to determine when [CFRA/]FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003); *see also Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1260 (2008) ("[T]he *employer* bears the burden to determine whether an employee's leave is protected . . . , and ultimately 'to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying[.]" (citations omitted)); *Cross v. United Airlines*, Fed. App'x 615, 617 (9th Cir. 2008) ("Once the employer acquired knowledge that the employee's leave was for a CFRA required reason, the employer must promptly notify the employee that the paid leave will be designated as CFRA leave.").

The record does not reflect that Saudia discharged these obligations. Saudia first mentioned the availability of leave under the CFRA in Salah's May 26, 2022, email, months after Do went out on leave. ECF 44-22 at 10 (stating, "[a]lthough not applicable, we wanted to provide a comparison that you have received and exceeded the 12 weeks unpaid FMLA leave (or 60 days) if such leave was applicable here."). Notwithstanding the position Defendant has taken in litigation, it also appears from that communication that Saudia made the determination that Do's leave was *not* qualifying leave under the CFRA/FMLA. *See id.* Yet Defendant presents *no* evidence that it identified specific facts in arriving at this determination and promptly notified Do of its designation. By failing to

---

[12] It is unclear from the undisputed facts whether and when Do sent her supervisor or another Saudia employee a copy of her doctor's February 7, 2022, note.

designate Do's leave as CFRA leave or otherwise mischaracterizing it as personal leave, Saudia interfered with her right to CFRA leave. *See Xin Liu*, 347 F.3d at 1135 (rejecting defendant's argument that "there was no practical distinction between the personal leave [the employee] was granted and the FMLA leave to which she was entitled" because its mischaracterization of the leave as personal, rather than qualifying, itself constitutes interference with her right to leave).

Moreover, Plaintiff contends that she could not have exhausted her CFRA leave when the leave granted was not CFRA qualifying leave. *See* ECF 45 at 21. Specifically, Plaintiff notes that the 68 IPB days that Saudia applied to Do's leave of absence were not leave benefits and did not come with job protection. Per Saudia's Handbook, the IPB policy is an "income replacement benefit[]," not a "leave benefit[]," and the policy does not guarantee that an employee would be "automatically eligible to be reinstated in the position [he or she] held prior to [their] absence []or an equivalent position, *unless* you are on an approved leave of absence that provides for such reinstatement." ECF 44-12 at 37.

Plaintiff has presented triable issues of fact as to whether Defendant denied or interfered with her statutory right to leave under the CFRA. The Court **DENIES** Defendant's Motion as to Claim 3.

***2. Retaliation (Claim 2)***

Under the CFRA, it is unlawful "for an employer to . . . discharge . . . or discriminate against, any individual because of .... [a]n individual's exercise of the right to family care and medical leave provided by" the CFRA. Cal. Gov't Code § 12945.2(l); *see also* 2 Cal. Regs. Code § 11904. Whereas "'interference' claims prevent employers from wrongly interfering with employees' approved leaves of absence, . . . 'retaliation' or 'discrimination' claims prevent employers from terminating or otherwise taking action against employees because they exercise those rights." *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 920 (2015).

The elements of a cause of action for retaliation in violation of the CFRA are: (1) the defendant was an employer covered by the CFRA; (2) the plaintiff was an employee

eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because the plaintiff exercised her right to CFRA leave. *Avila*, 165 Cal. App. 4th at 1254 (quoting *Dudley v. Dep't of Transport.*, 90 Cal. App. 4th 255, 261 (2001)); *accord Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 885 (2007). The burden-shifting analysis set forth in the Supreme Court's decision in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies to retaliation claims under the CFRA. *See Moore*, 248 Cal. App. 4th at 248. "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Faust*, 150 Cal. App. 4th at 885 (citation and internal quotation marks omitted).

Defendant first argues that Plaintiff fails to establish a prima facie case of retaliation under the CFRA because she had exhausted all leave entitlements under the CFRA. ECF 44-2 at 22. As explained above, the record does not show that Defendant ever designated Do's leave as CFRA qualifying leave or notified Do of its designation. As such, there is a triable issue of fact as to whether Plaintiff had been granted and exhausted CFRA qualifying leave.

Defendant next contends that even if Plaintiff has stated a prima facie case, it had a legitimate, nonretaliatory reason for her discharge in that she remained unable and unreleased to return to work at the time of her termination. *Id.* at 22-23. Defendant's argument misses the mark. "Of course, if Plaintiff was terminated because she requested CFRA leave, such a reason is plainly discriminatory." *Ruiz v. RSCR California, Inc.*, 683 F. Supp. 3d 1079, 1098 (C.D. Cal. 2023). Because Defendant has failed to offer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, the Court **DENIES** Defendant's Motion as to Claim 2.

**B. <u>FEHA Claims (Claims 4, 5, 6, 7, 8, 9, 13)</u>**

Plaintiff alleges seven claims pursuant to the FEHA—that Defendant (1) failed to engage in a timely, good faith, interactive process with Plaintiff to determine effective

reasonable accommodations for Plaintiff's disabilities, (2) failed to make reasonable accommodations for her disabilities, (3) discriminated against her based on her disability, (4) retaliated against her for requesting a reasonable accommodation, (5) retaliated against her for opposing alleged FEHA violations, (6) failed to prevent harassment, discrimination, and retaliation, and (7) discriminated against her based on her age. ECF 1-1 ¶¶ 89-114, 134-37.

***1. Failure to Engage in Interactive Process (Claim 5)***

The FEHA makes it an unlawful employment practice for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code §12940(n); *see also Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 971 (2014) (describing the interactive process as "an informal process designed to identify a reasonable accommodation that will enable the employee to perform his or her job effectively"), *as modified on denial of reh'g* (Dec. 23, 2014); *Wilson v. Cnty. of Orange*, 169 Cal. App. 4th 1185, 1195 (2009) ("Ritualized discussions are not necessarily required.").

"The employee must initiate the process unless his or her disability and the resulting limitations are obvious." *Swanson*, 232 Cal. App. 4th at 971; *see also Humphrey v. Memorial Hospitals Assn.*, 239 F.3d 1128, 1138 (9th Cir. 2001) (holding in an Americans with Disabilities Act ("ADA") case that "the employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed"). To initiate the interactive process, "no magic words are necessary," and an employer's obligation arises once it "becomes aware of the need to consider an accommodation." *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 62 n.22 (2006). Once the interactive process is initiated, "[b]oth employer and employee have the obligation 'to keep communications

open' and neither has 'a right to obstruct the process.'" *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1014 (2009) (quoting *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, (2000)). "Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party. Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *Id.* (quoting *Gelfo*, 140 Cal. App. 4th at 62, n.22). That an employer "took some steps to work with an employee to identify reasonable accommodations does not absolve the employer of liability[.] If the employer is responsible for a later breakdown in the process, it may be held liable." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008).

Defendant argues that Plaintiff has not presented any evidence creating a triable issue of fact that Saudia failed to engage in the interactive process. ECF 44-2 at 22. It maintains that because Plaintiff was not authorized to return to work at the time the interactive process should have occurred, Saudia was not required to engage in an interactive process with Do. *Id.* at 21-22.

The Court is not persuaded. The record reflects that Plaintiff initiated the interactive process on February 4, 2022, when she notified her supervisor that she was unable to return to work due to her medical condition. RSSUF 28. It is undisputed that from February 4, 2022, to May 19, 2022, in response to successive extensions of Do's medical clearance to return to work, Saudia upheld its obligations and granted her reasonable accommodations by (a) holding open her position while she was on a leave of absence and (b) extending her leave of absence under its leave and IPB policies. *See id.* 39.

The uncontroverted evidence, however, indicates that the interactive process broke down in May 2022. *See id.* 39-44; ECF 44-22. There is a triable issue as to which party was responsible for the breakdown in the interactive process. On the one hand, Do did not promptly respond to Salah's reengagement emails and failed to affirmatively communicate

until the day her leave was set to expire that she required further accommodation in the form of an extension of her leave of absence to August 19, 2022. On the other hand, once Do communicated that she was not medically cleared to return to work until August 19, 2022, Saudia did not investigate further. It did not request that Do produce any medical records, that Do's treating physician provide any reasoning for his medical opinion, or that a second physician offer a medical opinion. Construing the facts in the light most favorable to Plaintiff as the non-moving party, the Court finds that a reasonable jury could return a verdict for Plaintiff on her interactive process claim. Accordingly, the Court **DENIES** Defendant's Motion as to Claim 5.

***2. Failure to Reasonably Accommodate (Claim 6)***

The FEHA prohibits an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov't Code 12940(m)(1). "The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Wilson*, 169 Cal. App. 4th at 1192; *accord Lui v. City and Cnty. of San Francisco*, 211 Cal. App. 4th 962, 971 (2012).

A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Nadaf-Rahrov*, 166 Cal. App. 4th at 974. "[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999); *see also Jensen*, 85 Cal. App. 4th at 263 ("Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future."); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("Unpaid medical leave may

be a reasonable accommodation under the ADA.”). Specifically, the FEHA’s implementing regulations provide:

> When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, holding a job open for an employee on a leave of absence or extending a leave provided by the CFRA, FMLA, other leave laws, or an employer’s leave plan may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation, and does not create an undue hardship for the employer.

2 Cal. Code Regs. § 11068(c). Making a “[r]easonable accommodation does not require the employer to wait indefinitely for an employee’s medical condition to be corrected.” *Hanson*, 74 Cal. App. 4th at 226-27 (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1049 (6th Cir. 1998)); *see also* 2 Cal. Code Regs. § 11068(c) (“An employer, however, is not required to provide an indefinite leave of absence as a reasonable accommodation.”).

Defendant argues that Plaintiff cannot satisfy the second element of her reasonable accommodation claim because at the time of her termination she had not been medically cleared to return to work and therefore was unable to perform the essential functions of her position. ECF 44-2 at 21-22. This argument misstates the law. The FEHA contemplates reasonable accommodations in circumstances where “the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery.” 2 Cal. Code Regs. § 11068(c). Defendant’s reliance on the district court’s opinions in *Madick v. Presidio, Inc.*, 680 F. Supp. 3d 1135 (C.D. Cal. 2023), and *Shamir v. SCCA Store Holdings, Inc.*, No. CV 13-6672-ABC (AS), 2014 WL 12597151 (C.D. Cal. June 9, 2014)), is misplaced. In *Madick*, the court held that the employer was entitled to summary judgment because the plaintiff “ha[d] not offered satisfactory evidence that he was qualified to perform the essential functions of the position

at the time of his termination." 680 F. Supp. 3d at 1145. Yet there, unlike here, the employee argued that "certain simple adjustments would have enabled him to return to work," even though it was undisputed that he had not been medically cleared to return to work *by any date*. *Id.* at 1145-46. Likewise, in *Shamir*, the court determined that plaintiff was not "otherwise qualified" for employment because she was unable to be physically present at her employer's retail storefront, and after approximately a year, based on facts distinguishable from the case at bar, her leave of absence had become indefinite.

Here, it is undisputed that as of May 19, 2022, Saudia was aware that Do was medically cleared to return to work on August 19, 2022. RSSUF 38; ECF 44-22 at 4. Stated otherwise, the accommodation that Do sought was an extension of her medical leave to August 19, 2022. Saudia denied that request on May 26, 2022, when Salah emailed Do, explicitly stating that "[Saudia] understand[s] that your current medical clearance is August 19th and that at this time you are unable to return to work. If this remains the case, we will move to fill the open position and <u>your employment will be terminated</u> . . . ." ECF 44-22 at 10. Do was then terminated on June 23, 2024, before she was medically cleared to return to work. RSSUF 51. The evidence clearly shows that Saudia denied Do the accommodation she requested.

The viability of Plaintiff's claim turns on whether the requested accommodation was a reasonable one. "Ordinarily, the reasonableness of an accommodation is an issue for the jury." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022), *reh'g denied* (Oct. 6, 2022). Here, Defendant argues that Do's leave of absence was or became indefinite at the time of her termination. ECF 44-2 at 21. While it is true that an indefinite leave of absence is not a reasonable accommodation, *see* 2 Cal. Regs. Code § 11068(c), Defendant has not shown as a matter of law that Do's leave of absence became indefinite when she was terminated on June 23, 2022. As an initial matter, August 19, 2022, is a definite date in the "foreseeable future." *Jensen*, 85 Cal. App. 4th at 263. "The FEHA does not have a fixed limit on the amount of leave required as a reasonable accommodation." *Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal. App. 5th 1, 42 (2021). It is well-established that

"disability leave may in some circumstances exceed four months." *Sanchez v. Swissport*, 213 Cal. App. 4th 1331, 1341 (2013) (holding that plaintiff had stated a viable claim for failure to provide reasonable accommodations under FEHA, where defendant declined to extend plaintiff's four-month leave of absence by an additional three months); *see also Hanson*, 74 Cal. App. 4th at 227 (determining that seven additional months beyond the nine-month leave policy period constituted a reasonable accommodation); *Watkins v. Ameripride Servs.*, 375 F.3d 821, 828-29 (9th Cir. 2004) (finding that the employer had accommodated the employee by, among other efforts, holding his job open for a year).

Defendant once again relies on *Shamir*, where the district court determined that the plaintiff's leave of absence became indefinite where she had obtained "a series of notes from her doctors"—15 notes in the course of approximately one year—stating that she was unable to work, with several "project[ing] a return-to-work date, but each . . . succeeded by another note extending [her] leave." 2014 WL 12597151, at *2, 5. The facts in this case are distinguishable from *Shamir*. Here, Do had been on a leave of absence for four months at the time Saudia decided to not hold her position open for an additional three months, until her next projected return-to-work date. She obtained five—not 15—notes from her medical providers extending her leave. RSSUF 29, 30-31, 36-38. Moreover, there is no showing that Saudia had any reason apart from Do's successive doctor's notes to believe that she would remain out on leave indefinitely when it made the decision to terminate her employment. *Cf. Jensen*, 85 Cal. App. 4th at 263-64 (noting that it was undisputed that "both parties understood early on that [plaintiff] was unlikely ever to be able to return [to her prior or similar position]"). "Although an employer need not provide repeated leaves of absence for an employee who has a poor prognosis of recovery, the mere fact that a medical leave has been repeatedly extended does not necessarily establish that it would continue indefinitely." *Nadaf-Rahrov*, 166 Cal. App. 4th at 988.

This case raises a triable issue of fact as to whether holding open Do's job and extending her leave, even if unpaid, until August 19, 2022, would have accommodated Do without causing undue hardship to Saudia. *See Prilliman v. United Air Lines, Inc.*, 53 Cal.

App. 4th 935, 953-54 (1997); *see also Humphrey*, 239 F.3d at 1136 (holding in an ADA case that an employee is not required to show that "a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation"). The Ninth Circuit has held in reference to a Washington statute similar to FEHA, *see id.* at 949, 949 n.3, that, "[a]s long as at the time of [plaintiff's] termination, there were plausible reasons to believe that [she] could have been accommodated by [a] leave of absence, [the employer] is responsible for its failure to offer such a leave." *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 878 (9th Cir. 1989) (internal punctuation marks omitted), *cert. denied*, 498 U.S. 814 (1990). The record before the Court does not show that it was *im*plausible at the time of termination that an additional three months of medical leave would have allowed Plaintiff to return to work.[13] Because Defendant has not shown that it is entitled to summary judgment on Plaintiff's reasonable accommodation claim, the Court **DENIES** Defendant's Motion as to Claim 6.

***3. Disability Discrimination (Claim 7)***

The FEHA makes it unlawful for an employer to discharge a person from employment because of a physical or mental disability. *See* Cal. Gov't Code § 12940(a). But the FEHA "allows the employer to discharge an employee with a physical disability when that employee is unable to perform the essential duties of the job even with reasonable accommodation." *Green v. California*, 42 Cal. 4th 254, 257 (2007); *see also* Cal. Gov't Code § 12940(a)(1)-(2).

This case involves alleged "discrimination arising from an employer's intentionally discriminatory act against an employee because of his or her disability (disparate treatment

---

[13] Defendant notes that Plaintiff "was never medically cleared to return to work in <u>any</u> capacity, with or without a reasonable accommodation, until *at least 32 weeks after the termination of her employment*." ECF 44-2 at 7; RSSUF 55. This fact is irrelevant to whether there was a plausible reason to believe *at the time of her termination* that Do could have been accommodated by an extension of her leave of absence. *See Kimbro*, 889 F.2d at 878.

discrimination)." *Zamora*, 71 Cal. App. 5th at 30 (citation and internal quotation marks omitted). In evaluating claims for disparate treatment disability discrimination under the FEHA, California courts apply the burden shifting test set forth in *McDonnell Douglas*. *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000)). In general, "[t]he *McDonnell Douglas* analysis imposes on the plaintiff an initial burden of establishing a prima facie case of discrimination." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). "When an employer moves for summary judgment, however, the burden is reversed." *Lucent Techs.*, 642 F.3d at 745. To prevail on summary judgment, the employer must show that "(1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.* (quoting *Avila*, 165 Cal. App. 4th at 1247).

A disability discrimination claim premised on an unlawful discharge and a failure to accommodate claim "are, from a practical standpoint, the same. For the consequence of the failure to accommodate is, as here, frequently an unlawful termination." *Humphrey*, 239 F.3d at 1139; *see also Yphantides v. Cnty. of San Diego*, 660 F. Supp. 3d 935, 957 (S.D. Cal. 2023) ("While an employer's failure to accommodate and engage in the interactive process are distinct causes of action from a disability discrimination claim, they are components of [a] disability discrimination claim and may be considered if all three have been alleged in the complaint.").

Indeed, Defendant raises the same arguments for summary judgment on Plaintiff's disability discrimination claim as her failure to accommodate claim. *See* ECF 44-2 at 19-20. Specifically, Defendant argues that Do was "not qualified for her position because she could not work," and because she remained unable to return to work in any capacity, Saudia had a "legitimate, nondiscriminatory reason" for terminating Do's employment. *Id.* at 19. On both counts, Defendant's position is at odds with the FEHA. As an initial matter, Defendant ignores that Plaintiff was unable to return to work *because of her disability* and that, in such circumstances, a finite leave of absence could have been a reasonable

accommodation under the FEHA. *See Hanson*, 74 Cal. App. 4th at 226; *Jensen*, 85 Cal. App. 4th at 263. Moreover, as explained above, Defendant has not shown as a matter of law that Plaintiff's leave of absence became indefinite.

It is undisputed that at the time of Do's termination, and as early as May 19, 2022, Saudia was aware that Do was not medically cleared to return to work because of her disabling condition. *See* RSSUF 38; ECF 44-22 at 4; *see also Brundage v. Hahn*, 57 Cal. App. 4th 228, 236-37 (1997) ("[A] plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made."); *see also Avila*, 165 Cal. App. 4th at 1248 ("[T]o show that [the employer] acted with discriminatory intent, plaintiff was required to produce evidence that [defendant's] employees who decided to discharge him knew of his disability."). The uncontroverted evidence also shows that Saudia was aware of the possibility of a reasonable accommodation—holding open Do's position through her projected return-to-work date—but instead required Do to return to work sooner than her medical clearance date or otherwise face termination. ECF 44-22 at 10. The termination letter explicitly cites as the basis for Do's termination that she had "used all available leave of absence allotment and the company is unable to continue to hold your position open through your doctor's current medical leave notification." ECF 44-23 at 2; RSSUF 51. Because "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination," *Humphrey*, 239 F.3d 1139-40, "Plaintiff's absences resulted from [her] disability and thus are considered part of the disability," *McInteer v. Ashley Distribution Servs., Ltd.*, 40 F. Supp. 1269, 1286 (C.D. Cal. 2014). "By citing [her] absence as a basis for termination, Defendant[] ipso facto cited [her] disability." *McInteer*, 40 F. Supp. at 1286; *see also Humphrey*, 239 F.3d at 1140 ("The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.").

In these circumstances, a reasonable jury could conclude that "knowing that [Do]'s disability was the reason she had not returned to work, [Saudia] chose to terminate [Do]

instead of accommodating the disability—meaning that [Do's] disability was a motivating factor in [Saudia]'s decision to terminate her." *Norris v. Allied-Sysco Food Servs., Inc.*, 948 F. Supp. 1418, 1434 (N.D. Cal. 1996), *aff'd sub. nom. Norris v. Sysco Corp.*, 191 F.3d 1043 (9th Cir. 1999). The Court **DENIES** Defendant's Motion as to Claim 7.

***4. Retaliation (Claims 4 and 8)***

Under the FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). "Protected activity" means, among other things, that the employee "has opposed any practices forbidden . . . under [FEHA]." Cal. Gov't Code § 12940(h). The FEHA explicitly prohibits employers from "retaliat[ing] or otherwise discriminat[ing] against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." *Id.* § 12940(m)(2); *see also Moore*, 248 Cal. App. 4th at 245-46 (observing that the California Legislature amended the FEHA in 2015 to reflect that a request for accommodation constitutes protected activity).

To establish a prima facie case of retaliation under the FEHA, "a plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Moore*, 248 Cal. App. 4th at 244 (quoting *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)). The burden-shifting analysis under *McDonnell Douglas* once again applies "to determine whether there are triable issues of fact for resolution by a jury." *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109 (2007). "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1096 (S.D. Cal. 2020).

Defendant argues that Plaintiff has not established a prima facie case of retaliation under the FEHA because Plaintiff failed to engage in protected activity. *See* ECF 44-2 at

22 n.9. Saudia further argues that because Plaintiff was not able to return to work and had exhausted her leave benefits under Saudia's policy at the time of her termination, Saudia had a legitimate, nondiscriminatory reason for terminating her. *Id.* at 22-23. Neither argument is persuasive. As explained above, requesting an accommodation is a protected activity under the FEHA.[14] And as with Plaintiff's retaliation claim under the CFRA, the record indicates a retaliatory motive: Plaintiff was discharged because she requested additional job-protected leave as a reasonable accommodation instead of returning to work. Accordingly, the Court **DENIES** Defendant's Motion as to Claims 4 and 8.

***5. Failure to Prevent Harassment, Discrimination, and Retaliation (Claim 9)***

The FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "Reasonable steps" may include establishing and promulgating antidiscrimination policies, implementing procedures to handle complaints and grievances regarding discrimination, and promptly investigating discrimination claims. *See California Fair Emp. & Hous. Com. v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024-25 (2004).

Defendant argues that because Do's discrimination and retaliation claims under the FEHA fail, her derivative claim for failure to prevent such discrimination and retaliation must also fail. ECF 44-2 at 23-24; *see also Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) ("'There's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred

---

[14] The only protected activity alleged by Plaintiff in her Opposition is her request for reasonable accommodation. *See* ECF 45 at 17-18. To the extent Plaintiff's claim relies on any other forms of protected activities under the FEHA, the Court finds that the record does not support such a claim.

. . . .'"). Having found that Defendant is not entitled to summary judgment on Plaintiff's underlying FEHA claims, the Court **DENIES** Defendant's Motion as to Claim 9.

***6. Age Discrimination (Claim 13)***

The FEHA makes it an unlawful employment practice for an employer to discharge or discriminate against an employee "in compensation or in terms, conditions, or privileges of employment" based on age. *See* Cal. Gov't Code § 12940(a). As with disability discrimination, California courts apply the *McDonnell Douglas* burden-shifting test to evaluate claims of age discrimination under the FEHA. *See Arnold v. Dignity Health*, 53 Cal. App. 5th 412, 424 (2020). "In the context of the usual age discrimination case, a prima facie case of age discrimination arises when the employee shows that: (1) at the time of the adverse employment action, the employee was 40 years of age or older; (2) some adverse employment action was taken against the employee; (3) at the time of the adverse action the employee was satisfactorily performing his or her job; and (4) the employee was replaced in his or her position by a significantly younger person." *Id.* (quoting *Muzquiz v. City of Emeryville*, 79 Cal. App. 4th 1106, 1116 (2000)).

Defendant first argues that Plaintiff has not made a prima facie case for age discrimination because she has not provided any evidence of age-based animus motivating an adverse employment action. ECF 44-2 at 24. In her Opposition, Plaintiff refers to evidence that upon termination, "other, younger employees were offered a severance package where she was not."[15] ECF 45 at 25 (citing Do Depo. at 258:17-259:5).

---

[15] Insofar as Plaintiff contends that some other action taken by Defendant other than its denial of severance pay was motivated by age-based animus, she failed to raise, and thus waived or abandoned, these arguments. *See USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, *legal or factual*, why summary judgment should not be entered." (citation omitted)); *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case.").

Notwithstanding Do's testimony that she was "entitled to" severance pay upon termination, Do Depo. at 258:14-16, Saudia's written policy makes clear that she had no contractual right to severance. As Do was made aware at her deposition, Do Depo. at 259:6-18, under "Redundancy," Saudia's Handbook states, "When Saudia, for operational reasons, has to terminate an employee whose services are no longer required, Saudia may, in its sole discretion, offer severance pay equal to one week's salary for each completed year of service, up to a maximum of sixteen weeks." ECF 44-12 at 48. In other words, the legitimate, non-discriminatory reasons Do was denied severance were that she was not contractually entitled to severance, that her position had not been made redundant for operational reasons to even trigger the discretionary severance provision, and that Saudia, in its discretion, decided not to offer Do severance pay.

Once an employer has proffered evidence of a legitimate, nondiscriminatory reason for taking an adverse action, the plaintiff must then "attack the employer's proffered reasons as pretexts for discrimination" or offer "any other evidence of discriminatory motive." *Arnold*, 53 Cal. App. 5th at 425. The only evidence Plaintiff points to is her own testimony about a "list of people about [her] age group" who received severance packages within a year of her termination. *Id.* at 258:20-260:3. Plaintiff's testimony, without more, is insufficient to create a genuine issue of material fact. *See Guz*, 24 Cal. 4th at 362 ("[S]ummary judgment for the employer may thus be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred."). Thus, the Court **GRANTS** Defendant's Motion as to Claim 13.

**C. <u>California Labor Code Claims (Claims 10, 11, 12)</u>**

Plaintiff alleges that Defendant violated the California Labor Code by (a) retaliating against her for reporting noncompliance with various state laws, (b) failing to provide meal periods, and (c) failing to provide rest breaks. ECF 1-1 ¶¶ 115-133.

***1. Whistleblower Retaliation (Claim 10)***

Section 1102.5 of the California Labor Code "provides whistleblower protections to employees who disclose wrongdoing to authorities." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709 (2022). As relevant here, it prohibits an employer from retaliating against an employee for sharing information the employee "has reasonable cause to believe . . . discloses a violation of state or federal statute" or of "a local, state, or federal rule or regulation" with a government agency, with a person with authority over the employee, or with another employee who has authority to investigate or correct the violation. Cal. Labor Code § 1102.5(b). A protected disclosure under section 1102.5 "reasonably encompass[es] an employee's report or complaint that calls attention to a legal violation or potential violation in the workplace." *People ex rel. Garcia-Brower v. Kolla's, Inc.*, 14 Cal. 5th 719 (2023).

Section 1102.6 of the California Labor Code "supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims." *Lawson*, 12 Cal. 5th at 712. "First, it must be 'demonstrated by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action." *Id.* (quoting Cal. Labor Code § 1102.6). "Then, once the employee has made that necessary threshold showing, the employer bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." *Id.* (quoting Cal. Labor Code § 1102.6).

Defendant argues that there is no evidence in the record that Plaintiff engaged in any protected activity within the applicable statute of limitations.[16] ECF 44-2 at 24. Plaintiff

---

[16] Section 1102.5 "does not contain a specific limitations period applicable to claims brought under the statute. Various statutes of limitation may be applicable." *Yeoh v. Los Angeles Cnty. Off. of Educ.*, No. B324075, 2024 WL 3353917 (Cal. Ct. App. July 10, 2024) (noting that courts have applied limitations periods ranging from one to three years).

responds that she complained about the denial of meal breaks and the storage and mishandling of hazardous chemicals.[17] ECF 45 at 23. The record reflects that Do made complaints about the handling of toxic chemicals from "time to time" between 2019 and 2022. Do Depo at 237:22-238:9; *see also* ECF 45-1 (Do Decl.) ¶ 4. However, there is no evidence in the record—indeed, Plaintiff cites none—in support of her assertion that she complained about being denied meal breaks during her employment. At best, Plaintiff's declaration states that meal breaks "were summarily denied throughout [her] time at Saudia" and that her supervisor denied such breaks. Do Decl. ¶ 3. But "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (cleaned up). Plaintiff also contends, without reference to any evidence, that she complained of FEHA violations related to her disability. ECF 45 at 23. The record does not substantiate this claim. It was first communicated to Do that she would be required to return to work prior to her medical clearance date on May 26, 2022. ECF 44-22 at 9-10. In other words, the purported legal violation arose on May 26, 2022. Yet in subsequent communications with Saudia, Do did not report or complain that Saudia was violating the FEHA by denying her an accommodation. Instead, she emailed Salah to request that her compensatory time be used to cover some of her absences and that the remainder of her vacation days be included in her final paycheck. *See id.* at 11, 14. Plaintiff did not make a protected disclosure regarding any FEHA violations.

Even if Plaintiff had engaged in protected activity, Defendant maintains that there is no evidence in the record of a causal link between the protected activity and the adverse

---

[17] Plaintiff also allegedly made complaints about the filing of sensitive documents, the lack of a uniform allowance, a request that she delete another employee's logged hours, COVID-19 testing, and a request to audit the hours of her immediate supervisor. *See* RSSUF 12; Do Decl. ¶¶ 5-7. Plaintiff does not argue in her brief that these complaints were "protected activities" that form the basis of her whistleblower retaliation claim, *see* ECF 45 at 23-24, and therefore has abandoned those arguments, *see* note 16, *supra*.

employment action. ECF 44-2 at 24. The Court agrees. As to Do's complaint about toxic chemicals, the record is clear that Alehedeb, who made the decision to terminate Do, had no knowledge of any such complaints prior to discharging Do.[18] RSSUF 52. Do's complaints as to toxic chemicals can be ruled out as a "contributing factor" to her discharge. Accordingly, the Court **GRANTS** Defendant's Motion as to Claim 10.

### *2. Failure to Provide Meal Periods and Rest Breaks (Claims 11 and 12)*

Section 226.7 of the California Labor Code provides that "[a]n employer shall not require an employee to work during a [mandated] meal or rest or recovery period." Cal. Lab. Code § 226.7(b). An employer satisfies its obligation to provide meal and rest breaks when it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1040 (2012). "[E]mployers do not escape liability simply by having a formal policy of providing meal and rest breaks." *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014). "[A]n employer is liable for failing to 'provide' meal breaks if it has a policy or practice of prohibiting or discouraging meal breaks." *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 514 (N.D. Cal. 2008). "If the employer fails to provide a required meal period or rest break, it must compensate the employee with a "premium"—an additional hour of pay for each workday during which a violation occurred." *Arce v. The Ensign Grp., Inc.*, 96 Cal. App. 5th 622, 629 (2023); Cal. Lab. Code § 226.7(c). Any

---

[18] Plaintiff contends that she "complained repeatedly about the conditions of her employment to her supervisor," and that "[t]hese complaints were relayed to Alehedeb." RSSUF (citing Do Depo. at 91:21-92:11). This assertion lacks any substantiation, and the testimony cited by Plaintiff pertains to the alleged denial of a uniform allowance, which is not the subject of Do's whistleblower claim. *See* note 17, *supra*. There is no genuine dispute of material fact that Alehedeb lacked knowledge of Plaintiff's complaints regarding toxic chemicals.

unpaid premiums must be promptly paid to an employee when an employment relationship ends. *See id.*

Defendant first argues that any claim for missed meal or rest breaks prior to November 11, 2019, is barred by the applicable statute of limitations. ECF 44-2 at 25. The Court disagrees. The limitations period applicable to meal and rest break claims is three years. *See Murphy v. Kenneth Cole Prods, Inc.*, 40 Cal. 4th 1094, 1099, 1022 (2007) (applying three-year period to missed break pay claim). The limitations period runs from the date that any unpaid premiums were due upon termination, *i.e.*, Plaintiff's last wage statement. *See Arce*, 96 Cal. App. 5th at 632 ("[A]ny overdue premiums were required to have been paid in the [last] wage statement—and every outstanding premium [plaintiff]'s employer failed to pay as part of this wage statement constituted its own Labor Code violation, each of which fell within the limitations period."). Because Do received her final paycheck in and around June or July 2022 and filed suit in November 2022, there is no question that her meal and rest break claims fall within the limitations period.

It is undisputed that Plaintiff was entitled to one hour of uninterrupted break time per workday and that Saudia maintained a written break policy, which allowed employees who were unable to take their break at a normal time to take it at a different time.[19] RSSUF

[19] Plaintiff claims that "[e]mployees were not able to take necessary breaks for lunch and complained to supervisors about being unable to do so," RSSUF 22 (citing ECF 45-1 (Lyon Decl.) ¶ 3, at 5, Ex. B (Kalim Depo.) at 19:10-14), and that "[e]mployees were required to work the entirety of their eight-hour shifts, 'no break, no lunch, no nothing,'" *id.* (citing Kalim Depo. at 37:6-12; Do Depo. at 266:2-11). These statements misconstrue the cited testimony. Sharin Kalim, a former Saudia employee at LAX Station, testified that "at the city ticket office, we did have time for lunch and breaks as mandated by the state. It was enforced. The manager would make sure." Kalim Depo. at 18:3-6. On certain flight days, however, Kalim testified that she was unable to take breaks for the four-hour period prior to a departure. *Id.* at 18:7-13. Kalim further stated that on flight days where Do was the only ticket agent, Do would have to work the whole eight-hour shift but would only be unable to take a meal or rest break for "the four hours [she was] at the counter." *Id.* at 37:6-12.

21, 22. Notwithstanding the written policy, Plaintiff claims that she was denied a meal and rest break "every day" during her eight-year tenure at Saudia. ECF 45 at 26. The only evidence substantiating her allegation is her own testimony and affidavit. *See* Do Depo. at 265:22-266:5; Do Decl. ¶ 3. But the documentary evidence undercuts her allegations. *See* RSSUF 24, 25. Do's time records, which notate the days where she did not take a meal or rest break, reflect only nine days on which Do did not take such breaks. ECF 44-15 at 7, 10, 13, 16, 19, 22, 25, 38. In her declaration, Do states that her supervisor denied breaks because "as long as a plane is on the ground we are losing money." Do Decl. ¶ 3. It is undisputed that on flight days, employees were restricted from taking breaks for the four hours prior to a departure. RSSUF 22. That fact, however, does not support the conclusion that employees were prohibited from taking their break at another time on those workdays or that employees were denied meal and rest breaks on non-flight days. Even when viewing the facts in the light most favorable to the non-moving party, Plaintiff has not produced more than "a scintilla of evidence in support of [her] position . . . on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Accordingly, the Court **GRANTS** Defendant's Motion as to Claims 11 and 12.

**D. Wrongful Termination in Violation of Public Policy (Claim 1)[20]**

In her Complaint, Plaintiff asserts that her termination violated public policies set forth in various California statutes and constitutional provisions. ECF 1-1 ¶¶ 75-78. The

---

[20] Defendant argues in the alternative that Plaintiff's "contradictory representations regarding her ability to work [should] render her estopped from asserting any claims related to her disability or requests for accommodation." ECF 44-2 at 19 n.7. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations omitted). It also applies to positions taken in prior judicial or administrative proceedings. *See Milton H. Greene Archive, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012). In deciding whether judicial estoppel applies, a court typically must consider, among other factors, whether a party's later position is "clearly inconsistent" with its earlier position. *New Hampshire*, 532 U.S. at 751

elements of a claim for wrongful discharge in violation of public policy are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154-55 (2014). Plaintiff's wrongful termination claim is premised on the legal principle that "there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." *Id.* (quoting *Casella v. SouthWest Dealer Servs., Inc.*, 157 Cal. App. 4th 1127, 1138 (2007)).

Defendant argues that because Plaintiff's wrongful termination claim is derivative of her CFRA and FEHA claims, it fails for the same reasons. ECF 44-22 at 24. Having found that Plaintiff has raised triable issues of fact as to her CFRA and FEHA claims, the Court concludes that Defendant is not entitled to summary judgment on Plaintiff's wrongful termination claim. The Court **DENIES** Defendant's Motion as to Claim 1.

**E. Punitive Damages**

In her Complaint, Plaintiff alleges that Defendant's conduct was malicious, oppressive, fraudulent, and the like. ECF 1-1 ¶¶ 78, 83, 88, 92, 96, 101, 106, 110, 114, 119, 126, 133, 137. Plaintiff prays for punitive and exemplary damages. ECF 1-1 at 24.

California law permits an award of punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. "Although the clear and convincing evidentiary standard is a stringent one, 'it does not impose on a plaintiff the obligation to prove a case for punitive damages at summary judgment[.]'" *Butte Fire Cases*, 24 Cal. App. 5th 1150, 1158 (2018) (quoting *Am. Airlines v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1048 (2002)). "Summary judgment or summary adjudication on the issue of

---

(internal citations omitted). The Court is not persuaded that the cited evidence establishes that Plaintiff's current position is "clearly inconsistent" with her prior positions in the state unemployment and disability benefits proceedings.

punitive damages is proper only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." *Id.* (citation and internal quotation marks omitted).

Defendant argues that even if any of Plaintiff's claims survive summary judgment, she cannot show by clear and convincing evidence that Saudia acted with malice, oppression, or fraud in any action taken against her. ECF 44-2 at 26. Plaintiff responds that Saudia terminated her pursuant to a policy that an employee is not entitled to any job-protected leave after exhausting their leave benefits, not even as a reasonable accommodation, and that such a policy may constitute oppression or malice. ECF 45 at 26-27. The Court agrees with Plaintiff in concluding that it is possible for a reasonable jury to find that Plaintiff has presented clear and convincing proof of malice or oppression. The Court therefore **DENIES** Defendant's Motion as to punitive damages.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED IN PART** as to Claims 1 through 9 and **GRANTED IN PART** as to Claims 10 through 13.

**IT IS SO ORDERED.**

Dated: December 3, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE