GEOFFREY C. LYON (BAR NO. 132747)
*glyon@lyonlawyer.com*
**LYON LAW PC**
3553 Atlantic Ave Ste B-355
Long Beach, California 90807
Telephone: (562) 426-2112

Attorney for Plaintiff,
THUHONG DO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| THUHONG DO et. al., Plaintiff, vs. SAUDI ARABIAN AIRLINES CORPORATION et. al., Defendants. | Case No. 2:23-CV-00135-MRA (RAOx) **PLAINTIFF DO'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR A RULING ON DEFENDANT'S REQUEST FOR FEES AS SANCTIONS** Complaint Filed: November 14, 2022 Notice of Removal filed: January 9, 2023 Trial Date: March 3, 2025 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. No Showing of Risk of Irreparable Prejudice

Defendant makes no showing that a regularly noticed motion would result in any harm, let alone irreparable harm. This is insufficient *Whitaker v. Commercial Management Concepts, LLC* (C.D. Cal., Dec. 6, 2019, No. CV 19-8792 PSG (SKX)) 2019 WL 7877372, at *1 (ex parte without showing noticed motion would cause irreparable prejudice does not meet *Mission* standard); *Cohen v. Suleminian* (C.D. Cal., Mar. 7, 2024, No. 2:21-CV-08597-SSS-ASX) 2024 WL 3973014 (same); *United States for Use and Benefit of Asbestos Instant Response, Inc. v. Herman Construction Group, I Cohen v. Suleminian (C.D. Cal., Mar. 7, 2024, No. 2:21-CV-08597-SSS-ASX) 2024 WL 3973014nc.* (C.D. Cal., Sept. 23, 2014, No. CV 13-8800-R) 2014 WL 12600258, at *1 (same). The instant ex parte could be heard as a regular motion before, after or during the trial with no prejudice to Defendant.

However, Defendant has elected to proceed ex parte and accept the Court's ruling on an ex parte basis. Without any risk of harm at all, the sliding scale analysis in *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995) does not come in to play. Regardless, Defendant does not address any of the severe deficiencies in its application, discussed below, and therefore does not show a substantial probability of success. The *Mission* standards are not met.

### 2. No Notice or Opportunity to be Heard

Defendant's application is not itself an application for sanctions. The notice section of Defendant's ex parte application states the purpose of the application is to obtain a "ruling" on the Defendant's *previous* request for $14,070 in sanctions Defendant made in its January 31, 2025 Opposition (Doc. 80) (to Plaintiff's ex parte application to file an additional motion in limine).

However, Defendant's previous opposition to an ex parte did not provide Plaintiff with either notice or an opportunity to be heard. Due process requires not only notice that sanctions will be sought, but the opportunity to submit written

opposition. [FRCP 11(c)(1); *Miranda v. Southern Pac. Transp. Co*. (9th Cir. 1983) 710 F2d 516, 522; *Margo v. Weiss* (2nd Cir. 2000) 213 F3d 55, 64—"due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions"; *Adams v. Ford Motor Co*. (3rd Cir. 2011) 653 F3d 299, 308-309]

This Court's ex parte procedure followed in the underlying ex parte and opposition seeking sanctions did not provide for reply briefs and the Court ruled without a hearing. (Doc. 81) Plaintiff had no opportunity to be heard either by reply brief or hearing. Indeed, Plaintiff never received due process *notice* of Defendant's request for sanctions – not even ex parte notice.

An ex parte sanctions award would violate due process. *Sole Energy Co. v. Hodges*, 128 Cal. App. 4th 199, 208, 26 Cal. Rptr. 3d 823 (4th Dist. 2005) An order cannot conditionally authorize a party to apply ex parte for monetary sanctions in that the sanctions awarded would violate the notice requirements of due process. [*Alliance Bank v. Murray*, 161 Cal. App. 3d 1, 6, 207 Cal. Rptr. 233 (2d Dist. 1984); *Parker v. Wolters Kluwer U.S., Inc*., 149 Cal. App. 4th 285, 296–297, 57 Cal. Rptr. 3d 18 (2d Dist. 2007) (appeals court strikes ex parte order granting sanctions; order 'void')]

At a bare minimum an award of sanctions requires notice and opportunity for an opposing brief. *Paladin Assocs., Inc. v. Montana Power Co*., 328 F.3d 1145, 1164–65 (9th Cir. 2003) (court could only impose discovery sanctions where party had opportunity to brief the issue in opposition), citing *Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Plaintiff never had any opportunity to submit a reply brief or to be heard on the underlying request for sanctions. This opposition responds to the instant application for a "ruling" on the *previous* request for sanctions.

Even if the Court were to consider the instant application to be a new one for the same sanctions, it would suffer related fatal due process defects. Imposition of a monetary sanction that is "punitive" in nature, such as one for more than $10,000, is deemed similar to an adjudication of criminal contempt and requires appropriate

procedural safeguards (right to counsel, jury, etc.): "[A]lthough the imposition of a sanction for litigation misconduct is not technically a conviction of a crime, the $10,000 sanction imposed in this case required the protections of criminal procedure." *Mackler Productions, Inc. v. Cohen* (2nd Cir. 1998) 146 F3d 126, 129 ($10,000 sanction was punitive).

**3. Defendant's Conduct**

Another factor is the conduct of the party seeking sanctions. In ruling on a sanctions motion, the court may consider whether the moving party has engaged in related improper conduct. For example, where defendant sought sanctions for plaintiff's allegedly frivolous complaint, the court noted: "[I]t has not escaped our notice that … [defendant] has set forth 36 separate affirmative defenses … Some of these defenses … compel us to caution that defendants who live in glass pleadings ought not to throw Rule 11 stones." [*Associated Indem. Corp. v. Fairchild Indus., Inc.* (2nd Cir. 1992) 961 F2d 32, 36 (emphasis added); *Moore v. Vital Products, Inc.* (7th Cir. 2011) 641 F3d 253, 259—motion for sanctions denied where "neither side can claim the high ground"]

The Court denied the underlying ex parte in part based on the Defendant's representation it had revealed its defense that it would have terminated Plaintiff for moving to Nevada had it known of the move during her employment. For that proposition Defendant cited the Plaintiff's deposition. However, the deposition questions and answers indicate the defense would be that Plaintiff intended to move to Nevada and not return to work at Saudia – effectively quit – not that she would have been terminated because she moved. (Exh. 1)

Eleven months after Plaintiff's termination, Plaintiff took depositions asking whether there was any reason for the termination other than Plaintiff's exhaustion of paid leave. Defendant denied there was any other reason – and certainly did not claim it would have terminated Plaintiff for moving to Nevada.

Iman Abaza was Plaintiff's immediate supervisor. Supr. Abaza flatly denied there was any reason for the termination other than exhaustion of paid leave:

**Abaza Depo; 5/19/2023 at 51:2-20**

Q. So, Ms. Abaza, the question is, did you ever write down in a document that if Ms. Do had not taken medical leave in 2022, she would have been terminated anyway?
A. No. Why would I write that?
Q. I've got to ask.
So did you ever see a document that said or reflected if Ms. Do had not taken medical leave in 2022, she would have been terminated anyway?
A. No.
Q. Did you ever hear anyone you can identify by name say that if Ms. Do had not taken medical leave in 2022, she would not have been terminated anyway?
A. No.
Q. Did you ever form the belief that if Ms. Do had not taken medical leave in 2022, she would have been terminated anyway?
A. No.

(Exh. 2, Abaza Depo.)

In the depositions of the individuals most knowledgeable about the Plaintiff's termination—Mgr. Khalid Alehedeb and HR Mgr. Lina Salah—neither Nevada nor Las Vegas was mentioned when the deponents were questioned about the reasons for the Plaintiff's termination. Instead, the testimony focused exclusively on medical leave:

Mgr. Khalid Alehedeb made the termination decision in consultation with Defendant's headquarters and HR Director Lina Salah. Mgr. Khalid Alehedeb was produced as the person most qualified (PMQ) regarding reasons for termination (after

the first PMQ knew little to nothing about the termination. The only reason Mgr. Alehedeb gave for the termination was exhaustion of paid leave.

**Alehedeb Depo.; 7/17/2023 at 109:1 to 109:25:**

Q. Okay. When did you first approach, was it Babtain? Was that the last name?
A. Yeah.
Q. When did you first raise the issue with Mr. Babtain that you thought Ms. Do's employment should be terminated?
A. I don't recall exact date. I don't have a date.
Q. Can you give me an estimate of how long before the actual termination took place that you first approached –
A. I would say toward the ends. Not – not too early, until we reached to the conclusion that she's not coming back at that time. I reached out to him and I consulted him, and he said to consult with the local counsel and legal department and you make your decision based on that.
Q. Okay. Would you say that conversation or communication with Mr. Babtain happened more than a week before the termination?
A. Maybe less.
Q. Okay. Did Mr. Babtain in that – in that initial conversation raise any concerns with you about terminating?
A. Well, we went through that she's been given all the time off she's allowed for, and that's it.

(Exh. 3, Alehedeb Depo.)

Lina Salah was the HR Director for the U.S. who participated in the termination decision and confirms in her deposition, the year following the termination, did not hear any business or other reason for the termination:

**Salah Depo Vol. 2; 5/22/2023 at 46:24 - 47:6**

Q. All right. And I'm pretty sure I asked you this in the last deposition last Friday, but just so I don't forget or we don't miss it, did you hear Mr. Alchedeb, Alsadoon, Abaza, or anyone else in management, say why Ms. Do's employment needed to be terminated as of June 24th, 2022, whether for a business reason or some other reason?

A. No.

(Exh. 4, Salah Depo.)

Defendant's failure and refusal in deposition to identify the move to Nevada as an after-acquired basis supporting the *termination*, as opposed to an apparent argument Plaintiff was planning to quit, reasonably caused Plaintiff to understand the defense was new. At the same time Plaintiff fully respects and accepts the Court's ruling denying the right to file a motion in limine on the issue. (Lyon Decl. ¶ 6)

**"Exorbitant" Fee Request is Grounds for Denial**

Defendant's sanction request should be denied as exorbitant. "When an award of fees is permissive, denial is an appropriate sanction for requesting an award that is not merely excessive, but so exorbitant as to constitute an abuse of the process of the court asked to make the award." [*Budget Rent-A-Car System, Inc. v. Consolidated Equity LLC* (7th Cir. 2005) 428 F3d 717, 718 (emphasis added)—dealing with sanctions for frivolous appeal under FRAP 38]

Defendant requests $14,070 for filing an ex parte with 8 pages of text and a 2 page declaration. Attorney Jamilah Mensah, admitted to practice in 2006, contends her "standard billing rate is $1090," without evidence she or any other 2006 attorneys in Houston or Los Angeles or anywhere else were actually billed at that rate to any clients, including the instant Defendant, or were awarded that rate by any court, and no timesheets to back up the claim of 5.5 hours spent on the motion, which appears to have been drafted primarily by more junior attorney Natalie Lagunas.

Attorney Mensah's declaration then makes a hearsay assertion with no foundation that attorney Natalie M. Lagunas (who submitted no declaration) admitted

in 2017, worked for 8.5 hours on the opposition, with no timesheet, for a claimed fee-value of $8,075, or $950 per hour. There is not even a hearsay representation that attorney Lagunas has ever been billed to any client at that rate or any other rate, that any 2017 attorney anywhere in Houston, Los Angeles, or anywhere else bills at, or any court has awarded fees to Lagunas, that rate.[1]

The fact the Court did not award sanctions in the underlying ex parte, in response to the Defendant's unmistakable request for such a large amount, appears to have been the equivalent of a denial. However, that is up to the Court to say.

**4. Plaintiff is Not Making a Request for Sanctions in an Ex Parte Opposition**

When Defendant initially gave notice to Plaintiff it would be seeking a ruling on its previous request for fees and sanctions, Plaintiff's counsel (mis)understood Defendant was going to file a motion, not an ex parte application. Consequently, Plaintiff responded she might seek in her motion opposition, cross-sanctions against Defendant for a Rule 11 violation as to the exorbitant amount of fees Defendant contends it incurred in opposing the underlying ex parte. (Lyon Decl. ¶ 7.)

However, for all the reasons set forth above, because Defendant filed its request for a ruling ex parte, Plaintiff cannot request sanctions in opposition to the Defendant's ex parte without violating Defendant's due process rights, and therefore does not do so. (Lyon Decl. ¶ 7)

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] In light of attorney Mensah's declaration under Rule 11 that her $1090 hour rate in Los Angeles for a 2017 admittee is the reasonable market value of her time, Defendant is estopped from denying the reasonable value of attorney Lyon's time, a 1987 admittee, has a lesser fair market value in the Los Angeles community on any motion for fees after trial under 42 USC 1988 or Gov. Code 12965, and otherwise pursuant to law.

## 5. Conclusion

Defendant's ex parte for a "ruling" on a *previously* filed request for exorbitant sanctions in an opposition to an ex parte, to which Plaintiff had no notice, and for which Plaintiff had no opportunity to be heard in briefing or at hearing, should be denied.

DATED: February 13, 2025 LYON LAW PC

*/s/ Geoffrey C. Lyon*
Attorney for Plaintiff,
THUHONG DO

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: Lyon Law; 3553 Atlantic Ave Ste B-355, Long Beach, CA 90807. On the date of execution of this proof of service I served on interested parties in this action the attached:

**PLAINTIFF DO'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR A RULING ON DEFENDANT'S REQUEST FOR FEES AND SANCTIONS**

by faxing and/or placing true and correct copies thereof in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Jamila S. Mensah<br>**NORTON ROSE FULBRIGHT US LLP**<br>1550 Lamar, Suite 2000, Houston, Texas 77010, United States | Attorneys for Defendant<br>SAUDI ARABIAN AIRLINES CORPORATION DBA SAUDIA<br>Tel: + 1 (713) 651-5504<br>Email:<br>jamila.mensah@nortonrosefulbright.com<br>jenny.choi@nortonrosefulbright.com |
| Deborah F. Birndorf (SBN 179823)<br><br>**NORTON ROSE FULBRIGHT US LLP**<br><br>555 South Flower Street, Fl. 41<br>Los Angeles, California 90071 | Attorney for Defendant, SAUDI ARABIAN AIRLINES CORPORATION DBA SAUDIA<br>Tel: (213) 892-9200<br>Fax: (213) 892-9494<br><br>Email:<br>debbie.birndorf@nortonrosefulbright.com |

XX **BY EMAIL**

XX **FEDERAL:** I declare under the laws of the United States that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed at Long Beach, California on February 13, 2025.

*/s/ Geoffrey C. Lyon*